IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 6, 2001 Session

# OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., ET AL. v. CONCORD EFS, INC., ET AL.

**Appeal from the Court of Appeals, Middle Section**
**Chancery Court for Williamson County**
**No. I-25387      Cornelia A. Clark, Chancellor**

---

**No. M1999-02560-SC-R11-CV - Filed September 12, 2001**

---

The plaintiffs, who are or independent truck drivers and their representatives, claim they are intended third-party beneficiaries of certain contracts between Flying J, Inc., Pilot Corporation, and EFS National Bank, Inc.  The plaintiffs contend that Flying J, Inc. and Pilot Corporation breached their contracts with EFS National Bank, Inc. by improperly imposing surcharges on diesel fuel purchased with certain credit cards.  For the alleged breaches, the plaintiffs seek damages and injunctive relief. After thorough consideration and due deliberation, we conclude that the plaintiffs are not intended third-party beneficiaries of the contracts and thus have no standing to sue.  Accordingly, we reverse the judgment of the Court of Appeals.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed**

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which E. RILEY ANDERSON, C.J., FRANK F. DROWOTA, III,  JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Jonathan A. Dibble and Eric D. Barton, Salt Lake City, Utah, and Eugene N. Bulso, Jr. and Thor Y. Urness, Nashville, Tennessee, for the appellant, Flying J, Inc.

Robert R. Campbell and Amy V. Hollars, Knoxville, Tennessee, for the appellant, Pilot Corporation.

W. Gary Blackburn and John R. Callcott, Nashville, Tennessee, and Paul D. Cullen, Sr., Joyce E. Mayers, and Amy Irene Washburn, Washington, D.C., for the appellees, Owner-Operator Independent Drivers Association, Inc., Harold Landry, Jimmy Hux (d/b/a/ Hux Trucking), Richard Kershman, and Laurel Barrick.

J. Richard Buchignani, Douglas A. Black, and Lyle Reid, Memphis, Tennessee, for the appellees, Concord EFS, Inc. and EFS National Bank, Inc.

**OPINION**

## I. Facts and Procedural History

Plaintiffs Harold Landry, Jimmy Hux (d/b/a Hux Trucking), Richard Kershman, and Laurel Barrick are independent truck drivers and members of Owner-Operator Independent Drivers Association, Inc. (Owner-Operator). On several occasions, the plaintiffs purchased fuel at truck stops operated by defendants Flying J, Inc. (Flying J) and Pilot Corporation (Pilot) using Visa or MasterCard credit cards issued by defendant EFS National Bank, Inc. (EFS).[1] According to the plaintiffs' complaint, Flying J and Pilot imposed surcharges upon these purchases in violation of contracts between Flying J, Pilot, and EFS prohibiting surcharges on purchases made by use of a Visa or MasterCard credit card.[2] The plaintiffs assert that they are intended third-party beneficiaries of these contracts.

As noted by the Court of Appeals, an examination of the consumer credit system is essential to an understanding of the contracts at issue. In a basic sense, the chain of relationships governing consumer credit transactions has four "links": (1) credit card associations, (2) member banks, (3) merchants, and (4) cardholders. The credit card associations, which in this case are controlled by Visa and MasterCard, are national associations that license use of their logos and service marks and facilitate credit card transactions. Only banks and other similar financial institutions may become members of the Visa and MasterCard associations. These banks enter into membership agreements with Visa and MasterCard; the agreements incorporate the rules and regulations of Visa and MasterCard and allow the member banks to provide credit card processing services. The member banks perform two functions in processing credit card transactions: (1) "issuing banks" contract with consumers, issue credit cards to them, and maintain charge accounts; while (2) "merchant banks" contract with merchants who wish to accept credit cards and process transactions between merchants, card associations, and issuing banks.

When a cardholder wishes to use a credit card to make a purchase, he or she presents the card to the merchant, who usually "swipes" the card through an electronic point-of-sale device. The device reads information from the card and transmits it, along with information about the intended purchase, to the credit card association, which in turn relays the information to the issuing bank. The issuing bank confirms the validity of the card and determines whether the transaction is within the cardholder's credit limits. If the issuing bank approves the transaction, it transmits approval to the merchant, who then completes the sale.

---

[1] Defendant Concord EFS, Inc. is the parent company of EFS National Bank, Inc.

[2] It is undisputed that Flying J and Pilot charged a higher price for fuel purchased with credit cards than for fuel purchased with cash. However, Flying J and Pilot deny that they imposed surcharges on credit card transactions. Instead, they contend that they provided discounts on cash purchases. The practical distinction between a surcharge on credit card purchases versus a discount on cash purchases is not entirely clear, but our disposition of this case makes it unnecessary to resolve this question.

The transaction is then processed through a series of interchanges conducted over the member banks' communications network. The merchant bank forwards payment to the merchant, minus a processing fee, and then submits a claim to the issuing bank. The issuing bank makes payment through the credit card association, which deducts a service fee and forwards the balance to the merchant bank. The issuing bank then bills the cardholder for his or her purchase. Thus, the merchant bank, the issuing bank, and the credit card association each make a small profit every time the cardholder uses the credit card.

The issue under submission originated in the four separate contractual relationships between (1) the Visa credit card association and EFS; (2) the MasterCard association and EFS; (3) EFS and Flying J; and (4) EFS and Pilot. The Visa-EFS and MasterCard-EFS contracts establish EFS as a merchant bank in the two credit card associations. Both contracts incorporate the rules and regulations of the respective associations, and EFS agrees in both contracts to be bound by those regulations. Both Visa's Operating Regulations and MasterCard's Rules contain provisions prohibiting surcharges on credit card transactions, and EFS is instructed to ensure that merchants with whom it contracts observe this prohibition. In addition, the MasterCard Rules state that "these rules are intended to be solely for the benefit of [MasterCard] and its members," and the Visa by-laws provide that "Membership in the [Visa association] shall not be transferable or assignable." Both the Visa and MasterCard associations, however, have made efforts to notify cardholders of the no-surcharge provision, including publication of the provision on the Internet.

The EFS-Flying J and EFS-Pilot contracts govern the obligations of the parties in processing Visa and MasterCard transactions. Flying J and Pilot both agree that they "shall not impose any surcharge on transactions" and that they will be bound by the rules of Visa and MasterCard. Additionally, Flying J and Pilot warrant that transactions transmitted to EFS "represent[] a valid obligation for the amount set forth therein . . . and . . . there have been no service, carrying or any special charges . . . extracted in connection with the sale."

The plaintiffs are not parties to any of the contracts described above. In April 1998, however, they filed suit contending that, as cardholders, they were intended third-party beneficiaries of the no-surcharge provisions in the contracts. The defendants moved to dismiss the complaint pursuant to Tenn. R. Civ. P. 12.02(6),[3] asserting that the plaintiffs lacked standing to sue on the contracts. After extensive procedural wrangling between the parties, the trial court ruled that the defendants' motions would be treated as motions for summary judgment,[4] which it then granted. The Court of Appeals

---

[3]Rule 12.02 provides in pertinent part:

> Every defense . . . to a claim for relief in any pleading . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion in writing: . . . (6) failure to state a claim upon which relief can be granted.

[4]Tenn. R. Civ. P. 56.02 provides, "A party against whom a claim . . . is asserted or a declaratory judgment is
(continued...)

-3-

affirmed in part and reversed in part the decision of the trial court. It upheld the grant of summary judgment to the defendants on the Visa-EFS and MasterCard-EFS contracts, holding that the contractual provision directing EFS to use its best efforts to prevent merchants from imposing surcharges was insufficient to establish the plaintiffs as intended third-party beneficiaries. The court reversed the grant of summary judgment on the EFS-Flying J and EFS-Pilot contracts, however, holding that the plaintiffs were intended third-party beneficiaries entitled to enforce those contracts.[5]

The defendants appealed to this Court, contending that the Court of Appeals erred in holding that the plaintiffs were intended third-party beneficiaries of the EFS-Flying J and EFS-Pilot contracts. We granted review, and after thorough examination of the record and relevant authority, we hold that the plaintiffs are not intended third-party beneficiaries. Accordingly we reverse the judgment of the Court of Appeals.[6]

## II. Standard of Review

This case comes to the Court on a motion for summary judgment. Summary judgment is entered in favor of a party when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. Because summary judgment involves only questions of law and not factual disputes, no presumption of correctness attaches to a lower court's ruling on a motion for summary judgment. Thus, on appeal, we review the grant of summary judgment de novo to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. Cowden v. Sovran Bank/Central South, 816 S.W.2d 741, 744 (Tenn. 1991) (citing Hill v. City of Chattanooga, 533 S.W.2d 311, 312 (Tenn. Ct. App. 1975)).

## III. Analysis

[4](...continued)
sought may, at any time, move . . . for a summary judgment in the party's favor as to all or any part thereof." The trial court may treat motions to dismiss made pursuant to Tenn. R. Civ. P. 12.02(6) as motions for summary judgment if "matters outside the pleading are presented to and not excluded by the court." Tenn. R. Civ. P. 12.02.

[5]Although the court concluded that Owner-Operator did not meet the test for associational standing and thus could not maintain an action in its own name on behalf of its members, it nonetheless pointed out that the members of Owner-Operator could continue to seek the same injunctive relief that Owner-Operator had sought and that Owner-Operator could continue to support its members in the action.

[6]In their response to the defendants' application for permission to appeal, the plaintiffs raise three additional issues: (1) whether the Court of Appeals erred in holding that they were not intended third-party beneficiaries of the Visa-EFS and MasterCard-EFS contracts; (2) whether this Court should enter summary judgment for the plaintiffs on the issue of liability; and (3) whether the Court of Appeals erred in holding that Owner-Operator lacked associational standing to seek relief on behalf of its members. With respect to issue (1), we find no error and hold that the plaintiffs are not third-party beneficiaries of the Visa-EFS and MasterCard-EFS contracts for the same reasons discussed infra regarding the EFS-Flying J and EFS-Pilot contracts. Our resolution of the third-party beneficiary issues in favor of the defendants renders it unnecessary for us to address the remaining issues the plaintiffs have raised.

Generally, contracts are presumed to be "executed for the benefit of the parties thereto and not third persons." Oman Constr. Co. v. Tennessee Cent. Ry. Co., 370 S.W.2d 563, 572 (Tenn. 1963). Indeed, traditional privity rules provided that those who were not parties to a contract had no right to sue for its breach. See generally Richard A. Lord, Williston on Contracts § 37:1 (4th ed. 2000); see also, e.g., Exchange Bank of St. Louis v. Rice, 107 Mass. 37 (1871) ("[A] person who is not a party to a simple contract . . . cannot sue on the contract, and . . . a promise made by one person to another, for the benefit of a third person who is a stranger to the consideration, will not support an action by the latter."). The inflexibility of that rule, however, has given way to an exception when the contracting parties express an intent that the benefits of the contract flow to a third party. As stated by one court, "The third-party beneficiary concept arises from the notion that 'it is just and practical to permit the person for whose benefit the contract is made to enforce it against one whose duty is to pay' or perform." Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., 485 N.E.2d 208, 211 (N.Y. 1985) (quoting Seaver v. Ransom, 120 N.E. 639, 640 (N.Y. 1918)).

Under the modern rule, third parties may enforce a contract if they are intended beneficiaries of the contract. See Willard v. Claborn, 419 S.W.2d 168, 169 (Tenn. 1967); Moore Constr. Co. v. Clarksville Dept. of Elec., 707 S.W.2d 1, 9 (Tenn. Ct. App. 1985). If, on the other hand, the benefit flowing to the third party is not intended, but is merely incidental, the third party acquires no right to enforce the contract. Willard, 419 S.W.2d at 170. In order to maintain an action as an intended beneficiary, a third party must show: "(1) a valid contract made upon sufficient consideration between the principal parties and (2) the clear intent to have the contract operate for the benefit of a third party." First Tennessee Bank Nat'l Ass'n v. Thoroughbred Motor Cars, Inc., 932 S.W.2d 928, 930 (Tenn. Ct. App. 1996) (citing United American Bank of Memphis v. Gardner, 706 S.W.2d 639, 641 (Tenn. Ct. App. 1985)). The evidence of intent to confer a benefit must be clear and direct:

> It must appear, in order that a third person may derive a benefit from a contract between two other parties, that the contract was made and entered into directly or primarily for the benefit of such third person, and before he can avail himself of the exceptional privilege of suing for a breach of agreement to which he is not a party he must at least show that it was intended for his direct benefit.

Abraham v. Knoxville Television, Inc., 757 S.W.2d 8, 11 (Tenn. Ct. App. 1988).

Although the distinction between intended and incidental beneficiaries seems fairly clear, it has proven in practice to be extraordinarily difficult to define. See Moore Constr. Co., 707 S.W.2d at 7 (noting that "the ideas behind the theory are obscure and elusive" and "the decisions are inconsistent and in apparent conflict."). This Court first set out standards for differentiating between intended and incidental beneficiaries in Willard v. Claborn, 419 S.W.2d 168 (Tenn. 1967). In Willard, this Court held that where "the terms of the contract itself or the circumstances surrounding its execution clearly indicate the contract was intended to operate to the benefit of some third person," the beneficiary, though not a party to the contract, may maintain an action against the promisor. Id. at 170. Adopting the approach proposed in the Restatement (First) of Contracts § 133

(1932), the <u>Willard</u> Court held that third-party beneficiaries could be grouped into three classifications:

> First, where the performance of the promise will constitute a gift to the beneficiary; the beneficiary is a donee beneficiary. Second, if no purpose to make a gift appears from the terms of the contract and the performance of it will satisfy an actual or supposed asserted duty of the promisee to the beneficiary; the beneficiary is a creditor beneficiary. Third, in all other cases the beneficiary is deemed to be an incidental beneficiary.

<u>Id.</u>

The test adopted in <u>Willard</u>, however, did not prove to be entirely satisfactory. <u>See</u> <u>Moore Constr. Co.</u>, 707 S.W.2d at 7-8 (providing a general discussion of cases in which application of the <u>Willard</u> test was impractical); <u>but cf.</u> Lord, <u>supra</u>, § 37:7 at 35-35 (observing that "cases could be found where beneficiaries had properly been considered protected, although they fit comfortably within neither typical scenario," but nevertheless concluding that "the traditional terminology is both convenient and analytically sound."). Subsequent to <u>Willard</u>, in 1979, the American Law Institute's Restatement (Second) of Contracts proposed a new third-party beneficiary analysis. Under the test set forth in the Restatement (Second), the original "donee" and "creditor" beneficiary language was discarded because of "overtones of obsolete doctrinal difficulties"[7] and was replaced by an "intended beneficiary" category. The revised language perhaps more accurately reflects the goal of determining the intent of the contracting parties:

> Intended and Incidental Beneficiaries.
>
> (1)     Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either:
> (a)     the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
> (b)     the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

---

[7]Restatement (Second) of Contracts Chapter 14, introductory note (1979).

> (2)  An incidental beneficiary is a beneficiary who
> is not an intended beneficiary.

Restatement (Second) of Contracts § 302 (1979). In Moore Constr. Co., the Court of Appeals cited the Restatement (Second) approach with approval:

> [I]f recognition of a third party beneficiary's rights is "appropriate to effectuate the intention of the parties" and if there is either an expression in the contract that the contracting parties intended to benefit the third party (the "intent to benefit" test) or proof that the promisor's performance will otherwise discharge a duty owed to a third party beneficiary by the promisee (the "duty owed" test), then the third party beneficiary can maintain an action on the contract.

707 S.W.2d at 9.

Subsequently, both Willard and Moore Constr. Co. have been relied upon as authority by Tennessee courts. Compare, e.g., First Tennessee Nat'l Ass'n, 932 S.W.2d at 930 (applying Moore Constr. Co. in preference to Willard) with Abraham, 757 S.W.2d at 11 (citing the language adopted in Willard). As recently as 1994, in Speaker v. Cates Co., this Court relied upon Willard, but in so doing did not consider the merits of the language proposed in the Restatement (Second). See Speaker v. Cates Co., 879 S.W.2d 811 (Tenn. 1994).

After a thorough review of relevant authority, we conclude that this Court also should restate the analysis to be used in evaluating third-party beneficiary cases. Our objective is to provide an analytical framework which allows the contracting parties to control the terms of their agreement, yet which remains sufficiently broad to ensure that the rights of intended third-party beneficiaries in all cases will be protected. Accordingly, we hold as follows:

> A third party is an intended third-party beneficiary of a contract, and thus is entitled to enforce the contract's terms, if
>
> (1)  The parties to the contract have not otherwise agreed;
> (2)  Recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties; and
> (3)  The terms of the contract or the circumstances surrounding performance indicate that either:
>   (a)  the performance of the promise will satisfy an obligation or discharge a duty owed by the promisee to the beneficiary; or
>   (b)  the promisee intends to give the beneficiary the benefit of the promised performance.

In so holding, we reiterate that our primary focus is upon the intent of the contracting parties. Thus, part (1) of the test provides that courts should honor any expression of intent by the parties to reserve to themselves the benefits of the contract. Likewise, part (2) ensures that third-party beneficiaries will be allowed to enforce the contract only when enforcement would further the parties' objectives in making the agreement. In applying this part, courts should look to what the parties intended to accomplish by their agreement, and a third party should not be deemed an intended beneficiary if so doing would undermine the parties' purposes. Part (3) provides guidance for differentiating between intended and incidental beneficiaries.

In part (3), we focus upon the promisee's intent, and not the promisor's, because "[i]n third party cases, the right of [the third] party does not depend upon the purpose, motive, or intent of the promisor. The motivating cause of [the promisor's] making the promise is usually his desire for the consideration given by the promisee." 4 Corbin on Contracts § 776 (1951). Subsection (a) of this part encompasses those beneficiaries which under the Restatement (First) would have been deemed "creditor beneficiaries." Cf. Raritan River Steel Co. v. Cherry Bekaert & Holland, 407 S.E.2d 178, 182 (N.C. 1991) (comparing the Restatement (First) and Restatement (Second) approaches). Though this section is based upon the Restatement (Second), our analysis is broader in that it focuses upon the promisee's intent to "discharge a duty" rather than upon obligations of the promisee to pay money to the beneficiary. We choose this analysis because of the foreseeable circumstances under which analysis of the promisee's intent would fit more comfortably within the analytical framework of subsection (a) even though the duty owed to the beneficiary is not easily convertible into money.

Notably, the contracting parties in subsection (a) cases will not necessarily express a direct desire to confer a benefit upon the third party, for the promisee often may be motivated by a self-interested intent to discharge the duty owed to the third party. As noted in one California case, "in contracts of the creditor beneficiary type the main purpose of the promisee is not to confer a benefit on the third party beneficiary, but to secure the discharge of his debt or performance of his duty to the third party." Hartman Ranch Co. v. Associated Oil Co., 73 P.2d 1163 (Cal. 1937). Regardless of self-interest, however, a clear expression of intent to discharge a duty owed by the promisee to the third party will satisfy subsection (a).

Under subsection (b), the analysis more directly centers upon whether the promisee actually intends to confer a benefit upon the third party. Part (b) analysis will encompass those beneficiaries who under the Restatement (First) were deemed "donee beneficiaries," and it will also encompass those beneficiaries who do not seem to fit clearly within either of the original Restatement categories of donee or creditor beneficiary, yet who clearly were intended by the parties to receive the primary benefit of the contract. Cf., e.g., Restatement (Second) of Contracts § 302 cmt. d (1979) (discussing "[s]ituations in which neither a debt analysis nor a gift analysis is satisfactory").

Having established the test to be used in third-party beneficiary cases, we now apply that test to the case at bar. We first determine, under part (1), whether the parties have agreed that no third-party beneficiaries are intended. Significantly, the EFS-Flying J and EFS-Pilot contracts both state that they "cannot be assigned to any party by Merchant." While these statements do not explicitly

exclude third-party claims, the Court of Appeals has noted that similar statements have "been held to demonstrate that the terms of the contract were intended only to benefit the parties to the contract." <u>First Tennessee Bank Nat'l Ass'n</u>, 932 S.W.2d at 931. Moreover, the Visa and MasterCard rules and regulations, which were incorporated into both the EFS-Flying J and EFS-Pilot contracts, seem to imply an intent to restrict the agreement to the parties. For example, MasterCard's Rules state that they are "intended to be solely for the benefit of the [MasterCard] Corporation and its members." On the other hand, the exclusivity statements relied upon by the defendants are largely indirect and, in the case of the only direct statement, which is in the MasterCard Rules, the statement is concerned with applicability of the Rules themselves and does not directly involve the EFS-Flying J and EFS-Pilot contracts. Thus, while these statements weigh in favor of a finding that the parties intended to exclude third-party beneficiary claims, we hesitate to give the same dispositive weight to the statements that we would to an explicit statement in the contract that the parties intended to reserve to themselves the benefits of their agreement.

Still, even if we assume, without deciding, that the expressions of intent in the contracts are insufficient to exclude third-party beneficiary claims, we conclude under part (2) of our analysis that recognizing the plaintiffs as beneficiaries would not be "appropriate to effectuate the parties' intent." The plaintiffs ask this Court to allow them, as cardholders, to enforce the no-surcharge provision in the defendants' contracts. The contracts, however, already provide a means for cardholders to obtain relief from violations of the "no surcharge" policy. Both the Visa and MasterCard rules and regulations establish "chargeback" procedures by which cardholders may complain to their issuing bank of violations such as improper surcharges. When the issuing bank receives a complaint, it credits the cardholder's account and issues to the merchant bank a "chargeback" for the amount of the surcharge. The issuing and merchant banks may then either resolve the dispute among themselves or eventually settle it through arbitration. The chargeback procedures are designed to resolve cardholder claims through internal dispute resolution without the need for litigation. Allowing cardholders to enforce the no-surcharge provisions in court would bypass these procedures, thus undermining the parties' agreement to resolve cardholder disputes more efficiently and inexpensively. Therefore, recognition of the plaintiffs' third-party claims would not be appropriate to effectuate the intention of the parties.

Even if recognition of a third-party claim would effectuate the intention of the parties, however, the plaintiffs do not meet the requirements of either subsection (a) or (b) of the third part of our analysis, which distinguishes intended beneficiaries from incidental beneficiaries. In this case, subsection (a) is not satisfied because the promisee, EFS, did not owe any duty to the plaintiffs that would be discharged by Flying J's and Pilot's observation of the no-surcharge provision. The plaintiffs contend that they are third-party beneficiaries of the no-surcharge provisions in the Visa-EFS and MasterCard-EFS contracts, and their status as beneficiaries to those contracts imposed a duty upon EFS which was then discharged through the EFS-Flying J and EFS-Pilot contracts. However, as noted earlier, we agree with the Court of Appeals that the plaintiffs were not third-party

beneficiaries of the Visa-EFS and MasterCard-EFS contracts.[8] Therefore, because the plaintiffs were not third-party beneficiaries to the credit card association contracts, these contracts created no duty on the part of EFS which could be discharged through execution of the merchant contracts. Therefore, the plaintiffs are not intended beneficiaries under subsection (a).

Under subsection (b), we conclude that EFS did not intend to confer the primary benefit of the no-surcharge provisions upon the plaintiffs. Certainly, the plaintiffs benefitted from the no-surcharge provisions. But in examining the terms of the entire contract and the reasons for which it was created, it becomes clear that EFS intended not to confer the contract's benefits upon cardholders, but to encourage card usage in order to maximize its own profits. Under subsection (b), profit motive on the part of the promisee is insufficient to create an enforceable third-party right. Rather, the promisee must clearly intend to confer the principal benefits of the contract upon the third party. The contracts at issue here contain no such evidence of intent.

In sum, we conclude that the plaintiffs have failed to prove that they were intended third-party beneficiaries of the EFS-Flying J and EFS-Pilot contracts. The contracts contain some evidence, though not conclusive, that the parties wished to exclude third-party beneficiary claims. Moreover, allowing the plaintiffs to enforce the contracts would undermine the dispute resolution procedures established in the contracts and thus would not be appropriate to effectuate the intention of the parties. Finally, the plaintiffs have not shown that the contract or the circumstances surrounding its performance indicate that either: (a) the performance of the promise will satisfy an obligation or discharge a duty owed by the promisee to the beneficiary; or (b) the promisee intended to give the beneficiary the benefit of the promised performance. Therefore, we hold that the plaintiffs are incidental beneficiaries and, as such, have no right to enforce the contracts.

## IV. Conclusion

For the foregoing reasons, we conclude that the plaintiffs are not intended third-party beneficiaries entitled to enforce the defendants' contracts. Accordingly, we reverse the holding of the Court of Appeals to the contrary, and we reinstate the trial court's grant of summary judgment to the defendants. Costs on this appeal are taxed to the plaintiffs, Owner-Operator Independent Drivers Association, Inc., Harold Landry, Jimmy Hux (d/b/a Hux Trucking), Richard Kershman, and Laurel Barrick, for which execution may issue if necessary.

_____
ADOLPHO A. BIRCH, JR., JUSTICE

---

[8]The promisees in those contracts owed the plaintiffs no duty that would be discharged by prohibition of surcharges, and we conclude that the parties to the Visa and MasterCard contracts did not express a clear intent that the primary and direct benefit of the contracts flow to the plaintiffs.