# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### Assigned On Brief April 22, 2003

## AMSOUTH ERECTORS, LLC v. SKAGGS IRON WORKS, INC., ET AL.

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-01-0585-2      Floyd Peete, Jr., Chancellor**

_____

**No. W2002-01944-COA-R3-CV - Filed August 5, 2003**

_____

This appeal concerns a subcontractor's (AmSouth) claims for non-payment arising from the construction of the Peabody Place Retail and Entertainment Center in Memphis. The Appellees are the owner (Peabody), and the management firm they hired to oversee the project (Tri-Tech). The Appellant is a subcontractor in privity of contract with neither Appellee. The trial court granted summary judgment to Peabody on AmSouth's claims of Breach of Contract (under a Third-Party Beneficiary theory), Negligence, Negligent Misrepresentation, Unjust Enrichment/Quantum Meruit, and a claim to enforce a mechanics' and materialmen's lien. Summary judgment was likewise granted to Tri-Tech on AmSouth's claims against it for Breach of Contract (under a Third-Party Beneficiary theory), Negligent Misrepresentation, and Negligence.[1] We affirm in part, reverse in part, and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part; Reversed in part; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Richard D. Bennett, Collierville, Tennessee and Samuel C. Kelly and Cheri T. Atlin, Ridgeland, Mississippi, for the appellant, Amsouth Erectors, LLC.

Michael I. Less, Joseph T. Getz and John D. Willet, for the appellee, Peabody Place Centre, L.P.

John McQuiston, II, Memphis, Tennessee for the appellee, Tri-Tech Planning and Engineering, Inc.

## OPINION

_____

[1] While the negligence claim is not mentioned in the Order granting Tri-Tech summary judgment, the Order granting Peabody summary judgment stated that "all of AmSouth's claims against Peabody Place and against Tri-Tech, which are based on negligence and negligent misrepresentation are dismissed with prejudice."

The parties to this dispute were all involved in the construction of the Peabody Place Retail and Entertainment Center ("the Project") in downtown Memphis. Peabody Place Centre, L.P. ("Peabody"), the owner of the project, entered into a contract with Tri-Tech Planning Consultants, Inc. ("Tri-Tech") whereby Tri-Tech agreed to serve as the program manager on the Project. Peabody also entered into a contract with Skaggs Iron Works, Inc. ("Skaggs") whereby Skaggs agreed to serve as the prime contractor on the Project in the areas of structural steel fabrication and erection. Skaggs subsequently entered into a contract with AmSouth Erectors, LLC, ("AmSouth") whereby AmSouth agreed to provide the erection services for the project. Neither Peabody nor Tri-Tech entered into a contractual agreement with AmSouth.[2] Despite this fact, AmSouth claims that it is a third-party beneficiary of both the Peabody/Tri-Tech contract as well as the Peabody/Skaggs contract. As such, AmSouth sued both Peabody and Tri-Tech for breach of contract asserting, *inter alia*, that Peabody's failure to pay Skaggs, per the Peabody/Skaggs contract, had resulted in Skaggs not paying AmSouth.

Additionally, AmSouth exercised its rights to assert a mechanics' and materialmen's lien[3] against Peabody's property to secure payment for its performance. Peabody subsequently recorded a bond to indemnify against the lien, the effect of which was to discharge the lien.[4] AmSouth sought to enforce this lien as part of their claim. Peabody argued that, as the lien had been discharged, there was no lien to enforce and, therefore, the claim should be dismissed.

AmSouth also claimed that both Peabody and Tri-Tech were guilty of negligence in the performance of their duties which caused damage to AmSouth. The Appellee's asserted that, as the damages claimed by AmSouth were economic damages only, the "economic loss doctrine" barred recovery. AmSouth asserted that they fell within an exception to the doctrine, in that they were claiming damages for negligent misrepresentation, not merely simple negligence. Appellees, while acknowledging this exception, insisted that AmSouth had failed to properly plead this cause of action.

Finally, AmSouth asserted that, although they lacked privity of contract with Peabody, they were nonetheless entitled to recover for services performed which benefitted Peabody under the quasi-contractual theory of unjust enrichment. Peabody asserted that AmSouth could not seek recovery from them under this theory until AmSouth had exhausted its remedies against the party with whom they had contracted, Skaggs.

---

[2]AmSouth argues that since the Peabody/Skaggs contract was "incorporated herein and made a part of" the contract between Skaggs and AmSouth, that this bolsters their third-party beneficiary claim. We disagree. To the contrary, the effect of this provision was to bind AmSouth to the provision that "[n]othing contained in the Contract Documents or otherwise shall create any contractual relationship between the Owner [Peabody] and any subcontractor or sub-subcontractor."

[3]*See* Tenn. Code Ann. § 66-11-101, *et seq.*

[4]Tenn. Code Ann. § 66-11-142(a) (Supp. 2002).

-2-

The trial judge granted summary judgment to the Appellees (Defendants below) on all the aforementioned claims. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings not inconsistent with this opinion.

### *Standard of Review*

As indicated, this is an appeal from a grant of summary judgment. The standard for review of a motion for summary judgment is set forth in *Staples v. CBL & Assocs.*, 15 S.W.3d 83 (Tenn. 2000):

> The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met**.** *See Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993). The moving party has the burden of proving that its motion satisfies these requirements. *See Downen v. Allstate Ins. Co.*, 811 S.W.2d 523, 524 (Tenn. 1991). When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *See Byrd*[], 847 S.W.2d at 215.
>
> To properly support its motion, the moving party must either affirmatively negate an essential element of the nonmoving party's claim or exclusively establish an affirmative defense. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). If the moving party fails to negate a claimed basis for the suit, the [nonmoving] party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. *See McCarley*[]*,* 960 S.W.2d at 588; *Robinson*[], 952 S.W.2d at 426. If the moving party successfully negates a claimed basis for the action, the [nonmoving] party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.
>
> The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the

light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson*[], 952 S.W.2d at 426; *Byrd*[], 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

*Staples*, 15 S.W.3d at 88-89 (footnote omitted).

### Third-party Beneficiary Claims

Appellant asserts that "[w]hether AmSouth . . . is a third-party beneficiary of the contracts [at issue] is a question of fact that should not have been decided on summary judgment." However, "[t]he question whether a contract was intended for the benefit of a third person is generally regarded as one of construction[,]" 17A Am. Jur. 2d *Contracts* § 441 (1991),[5] and "[t]he ascertainment of the intention of the parties to a written contract is a question of law, rather than a question of fact." *Hamblen County v. Morristown*, 656 S.W.2d 331, 335-36 (Tenn. 1983). The question presented, therefore, is one suited for disposition via summary judgment.

In *Owner-Operator Independent Drivers Ass'n v. Concord EFS, Inc.*, 59 S.W.3d 63 (Tenn. 2001), "[t]he leading case in Tennessee on the requirements for third-party beneficiary status[,]" *Nichols v. Transcor America, Inc.*, No. M2001-01889-COA-R9-CV, 2002 Tenn. App. LEXIS 449, at *22 (Tenn. Ct. App. June 25, 2002), our Tennessee Supreme Court "restate[d] the analysis to be used in evaluating third-party beneficiary cases." *Concord*, 59 S.W.3d at 70. This restatement was intended "to provide an analytical framework which allows the contracting parties to control the terms of their agreement, yet which remains sufficiently broad to ensure that the rights of intended third-party beneficiaries in all cases will be protected." *Id.* The *Concord* court then announced a three prong test to be used in determining whether a "third party is an intended third-party beneficiary of a contract. . . ." *Id.*

The *Concord* court instructed that, when determining whether a party is an intended third-party beneficiary, the "primary focus is upon the intent of the contracting parties" and, accordingly, "courts should honor any expression of intent by the parties to reserve to themselves the benefits of the contract." *Id.* Consistent with this focus on the parties' intent, the first prong of the test annunciated by the court provides that, in order for there to be an intended third-party

---

[5] "Whether a third-party beneficiary is merely an incidental beneficiary is a question of construction." *Abraham v. Knoxville Family Television, Inc.*, 757 S.W.2d 8, 10 (Tenn. Ct. App. 1988) (citing 17 Am. Jur. 2d *Contracts* § 308).

beneficiary of any contract, "[t]he parties to the contract [must] have not otherwise agreed[.]"[6] *Id.*

In the present case, the contract between Peabody and Skaggs provides that "[n]othing contained in the Contract Documents or otherwise shall create any contractual relationship between the Owner [Peabody] and any subcontractor or sub-subcontractor." Likewise, the contract between Peabody and Tri-Tech provides that "[n]othing contained herein shall be deemed to create a contractual relationship between or among Tri-Tech, Contractors, Architect, subcontractors or Consultants for the Project, nor shall anything contained herein be deemed to give any such party or any third party any claim or right of action against Owner or Tri-tech."

The *Concord* court noted that, while the contracts at issue in that case contained statements that "weigh in favor of a finding that the parties intended to exclude third-party beneficiary claims[,]" such statements do not carry "the same dispositive weight . . . that . . . would . . . an explicit statement in the contract that the parties intended to reserve to themselves the benefits of their agreement." *Concord*, 59 S.W.3d 63 at 72. In the present case, each contract contains just such an "explicit statement . . . that the parties intended to reserve to themselves the benefits of their agreement" which carry "dispositive weight" as to the parties "inten[t] to exclude third-party beneficiary claims[.]" *Id.* at 72. Accordingly, AmSouth is not a third-party beneficiary entitled to enforce either of the aforementioned contracts, and summary judgment on this issue was proper, as to both Tri-Tech and Peabody.

### *Negligence/Negligent Misrepresentation*

The trial court granted summary judgment to both Peabody and Tri-Tech on AmSouth's claims of negligence and negligent misrepresentation. Summary judgment was proper on the negligence claims as the damages claimed were strictly economic and thus barred by the "economic loss doctrine."[7]

Tennessee, however, has recognized an exception to this general rule. A plaintiff may maintain an action for purely economic loss based upon negligent supervision or negligent misrepresentation. In such a case § 552 of the Restatement (2d) of Torts provides the standard to be applied, and privity between plaintiff and defendant is not required. *See John Martin Co. v.*

---

[6]Appellant cites *Moore Construction Co., Inc. v. Clarksville Department of Electricity*, 707 S.W.2d 1 (Tenn. Ct. App. 1985) for the proposition "that generally, on a complex construction project like this one, each of the contractors is a third-party beneficiary of the owner's contract with other contractors on the same project." Appellant fails to note, however, that *Moore*, as well as *Concord*, allows for third-party beneficiary status only "*[u]nless the construction contracts involved clearly provide otherwise.*" *Moore*, 707 S.W.2d at 10 (emphasis added). Accordingly, AmSouth cannot claim intended third-party beneficiary status under either *Moore* or *Concord*.

[7]"The economic loss rule [or doctrine], which is usually traced to *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 309 (1927), refers to the prohibition against recovery in negligence or products liability for purely economic loss, as distinguished from loss traced to personal injury or property damage." Matthew S. Steffey, *Negligence, Contract, and Architects' Liability for Economic Loss*, 82 Ky. L.J. 659, 660 n.6 (1994).

*Morse/Diesel, Inc.*, 819 S.W.2d 428, 435 (Tenn. 1991). AmSouth asserts that they fit within this exception and, therefore, the trial court erred in granting summary judgment. We cannot agree.

In order to come within the exception noted in *John Martin* a party must assert a claim for negligent misrepresentation. The initial complaint filed by AmSouth, as well as their amended complaint, allege only "negligence" by Peabody and Tri-Tech.[8] AmSouth's failure to title their pleading as one for negligent misrepresentation does not, however, prevent them from pursuing a claim for negligent misrepresentation for "[i]t is well settled that a trial court is not bound by the title of the pleading, but has the discretion to treat the pleading according to the relief sought[,]" *Norton v. Everhart*, 895 S.W.2d 317, 319 (Tenn. 1995). In exercising this discretion the trial court shall give the pleadings "the effect required by their content, without regard to the name given them by the pleader." *State by Canale v. Minimum Salary Dep't of A. M. E. Church, Inc.*, 477 S.W.2d 11, 12 (Tenn. 1972)(citations omitted).

It is also true, however, that

> [w]hile a complaint in a tort action need not contain in minute detail the facts that give rise to the claim, it either must contain 'direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested . . . by the pleader, or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial.'

*Donaldson v. Donaldson*, 557 S.W.2d 60, 61 (Tenn. 1977) (citing C. Wright and A. Miller, Federal Practice and Procedure, § 1216 at 121-123). Additionally, the Tennessee Rules of Civil Procedure provide that a pleading which sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Tenn. R. Civ. P. 8.01.

As noted, where a party bases an action for economic loss upon a theory of negligent misrepresentation, "the applicable law in Tennessee, absent privity, is found in the Restatement

---

[8]We are aware of Rule 15.02 which provides that issues not raised by the pleadings can be considered to have been properly pled where impliedly or expressly tried with the consent of the parties. Assuming that the term "tried" is sufficiently broad to cover pre-trial motions, we find this rule inapplicable in situations such as that presented here, where the movant's motion for summary judgment rests upon the Plaintiff's alleged failure to set forth a sufficient plea. (We are cognizant that *Trinity Indus. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 182, 183 (Tenn. Ct. App. 2001), could be read as allowing a different conclusion. *Trinity*, however, does not provide the substance of the underlying motion for summary judgment.) To hold otherwise would result in the anomalous determination that, although the initial complaint did not sufficiently allege negligent misrepresentation, the movant's motion for summary judgment based on this fact, coupled with the non-moving party's answer and the subsequent determination by the trial court on this issue, would amount to the issue having been implicitly or explicitly tried, thus resulting in the claim "be[ing] treated in all respects as if [it] had been raised in the pleadings." Tenn. R. Civ. P. 15.02. Thus, the end result of a motion for summary judgment, premised upon an insufficient plea, would be to convert the deficient plea to a sufficient one. Such an absurd result runs afoul of our established practice of considering substance over form when construing a motion. *See Tennessee Farmers Mut. Ins. Co. v. Farmer*, 970 S.W.2d 453, 455 (Tenn. 1998).

(2d) of Torts § 552 (1977)[,]" *John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 431 (Tenn. 1991), which provides:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in the obtaining or communicating of the information.

*Id.*

This Court has stated that, "even under today's relaxed rules of pleading, it is necessary to include enough facts in a complaint to articulate a claim for relief." *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 300 (Tenn. Ct. App. 2001). AmSouth's claims, as pled, do not contain direct allegations that either Peabody or Tri-Tech "supplie[d] false information for the guidance of AmSouth" or that either party "failed to exercise reasonable care or competence in the obtaining or communicating of the information." Nor do we find them to "contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial." As "[t]here is no duty on the part of the court to create a claim that the pleader does not spell out in his complaint[,]" *Trau-Med of America, Inc. v. Allstate Insurance Co.*, 71 S.W.3d 691, 704 (Tenn. 2002) (quoting *Donaldson v. Donaldson*, 557 S.W.2d 60, 62 (Tenn. 1977)), the grant of summary judgment as to this "claim" was proper and is, therefore, affirmed.[9]

### *Quantum Meruit/Unjust Enrichment*

AmSouth, in essence, asserts two separate claims of unjust enrichment against Peabody: one arising from Skaggs' failure to pay AmSouth for work performed that benefitted Peabody per the Skaggs/AmSouth contract, and another concerning work that AmSouth was requested to perform by Peabody, or its agents, in addition to that contained in the AmSouth-Skaggs contract.[10]

The Tennessee Supreme Court has held that unpaid materialmen can assert an unjust enrichment claim against a property owner. *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 155 (1966). The *Paschall* court conditioned this right, however, on the claimants demonstrating that

---

[9] The trial court granted summary judgment in favor of Tri-Tech upon different grounds. We note, however, that "this Court will affirm a decree of the trial court correct in result, though rendered upon different, incomplete or erroneous grounds." *Hopkins v. Hopkins*, 572 S.W.2d 639, 641 (Tenn. 1978).

[10] AmSouth's complaint alleges that "AmSouth was directed to perform extra or additional work not included in the original subcontract. This work was performed in accordance with express directions from Peabody, Tri-Tech and Skaggs. AmSouth has not been paid for this extra work."

it had exhausted its remedies against the contractor with whom they enjoyed privity of contract.[11] *Id.* In the present case, the trial court granted summary judgment to Peabody, finding that AmSouth had failed to exhaust its remedies against Skaggs.

The purpose behind the exhaustion of remedies requirement was discussed in *Window Gallery of Knoxville v. Davis*, No. 03A01-9906-CH-00225, 1999 Tenn. App. LEXIS 775, at *1 (Tenn. Ct. App., filed Nov. 24, 1999) (*no perm. app. filed*), where the court stated "that the exhaustion of remedies defense 'is a judge-made doctrine whose purpose is to winnow out claims that are not ripe for adjudication.'" *Window Gallery*, 1999 Tenn. App. LEXIS 775, at *8 (quoting *Byrn v. Metropolitan Bd. of Pub. Educ.*, 1991 Tenn. App. LEXIS 46, No. 01A01-9003-CV-00124 (Tenn. Ct. App., filed Jan. 30, 1991)(*no perm. app. filed*)). The *Window Gallery* court then went on to state that

> [r]ipeness is a category of justiciability that questions whether the dispute has matured to a point that warrants a judicial decision. The central concern is whether the case involves uncertain or contingent future events that may or may not occur as anticipated or, indeed, may not occur at all.
>
> Determining whether a controversy is ripe enough to be justiciable involves a two-part inquiry. The court must first determine whether the issues are of the type that would be appropriate for judicial determination. Then the court must consider the hardship that declining to consider the case will have on the parties. The courts will decline to act in cases where there is no need for the court to act or where the refusal to act will not prevent the parties from raising the issue *at a more appropriate time*.

*Window Gallery*, 1999 Tenn. App. LEXIS 775, at *9 (citations omitted)(alteration in original). "Whether or not a plaintiff . . . has exhausted it remedies so as to allow it to pursue an unjust enrichment claim against a homeowner must be determined by the facts of each individual case." *Id.*

In *Window Gallery*, as here, the plaintiff sued both the subcontractor and the owner to collect funds owed to them.[12] The plaintiff then moved for summary judgment against the owner, but not the subcontractor. The plaintiff prevailed, thus leaving the suit against the subcontractor pending at the time of the owner's appeal of the grant of summary judgment. Based on these facts, this court found that the grant of summary judgment against the owner was improper, for the plaintiff had failed to exhaust his remedies against the subcontractor. The court determined that "[t]here is nothing in this record before us that shows further pursuit by

---

[11]The court held "that before recovery can be had against the landowner on an unjust enrichment theory, the furnisher of the materials and labor must have exhausted his remedies against the person with whom he had contracted, and still has not received the reasonable value of his services." *Paschall's* 407 S.W.2d at 155.

[12]The plaintiff in *Window Gallery* initially sued the parties in separate suits, which were consolidated.

[plaintiff] of [the subcontractor] through its lawsuit would be futile. We hold that while [plaintiff] has taken some steps to attempt recovery from [the contractor with whom they enjoyed privity of contract], it has not exhausted its remedies against [that party]." *Id.* at \*10, 11.

In the present case AmSouth has taken the same steps as the plaintiff in *Window Gallery*. They have filed suit against Skaggs, but that suit is still pending. Accordingly, until such time as AmSouth receives a judgment against Skaggs and is unable to collect upon it, the cause of action against Peabody is premature. Accordingly, the grant of summary judgment in favor of Peabody, as far as it concerns the amounts owing on the AmSouth-Skaggs contract, is affirmed.

This does not end our analysis, however, for the claims against Peabody which arise outside the AmSouth-Skaggs contract do not require that AmSouth exhaust its remedies against any other party in order to proceed. Accordingly, to the extent that such claims arise independent of the AmSouth-Skaggs contract, the grant of summary judgment was in error and is reversed.

### *Lien Claim*

Peabody asserts that, upon acquiring a bond to discharge Appellants lien, as prescribed in Tenn. Code Ann. § 66-11-142 (Supp. 2002), Peabody was "no longer liable to the claimant" and, accordingly, it was proper for the trial court to dismiss AmSouth's claim seeking to enforce its lien. Peabody further asserts that only "the obligors on the bond are liable to the claimant." This is true. Peabody overlooks the fact, however, that as principal on the bond, Peabody is also an "obligor on the bond"[13] and, therefore, still liable to AmSouth for any judgment entered against it. The bond merely insures that AmSouth will be able to recover a judgment, either from Peabody, or in the case Peabody cannot meet their obligation, from the surety. It in no way reduces Peabody's potential liability to AmSouth.

Additionally, Peabody argues that AmSouth's attempt to enforce their lien cannot stand, as the lien has been replaced by the bond and, therefore, "AmSouth may maintain its cause of action directly against the bond." Peabody's use of the word "may" is correct, for the Code provides that "[t]he person asserting the lien [AmSouth] *may* make the obligors on the bond parties to any action to enforce the claim, and any judgment recovered may be against *all or any* of the obligors on the bond." Tenn. Code Ann. § 66-11-142 (Supp. 2002) (emphasis added.). Clearly, the statute does not *require* AmSouth to make the surety a party to the suit. The exercise of this option, to choose the parties to the suit, will, however, determine the procedural posture of the case, for

---

[13] Black's Law Dictionary defines "obligor" as a "[p]erson obligated under a . . . bond." Black's Law Dictionary 971 (5th ed. 1979). The Bond referred to lists Peabody "as Principal[.]" *Black's* defines "Principal," as the term relates to the "Law of guaranty and suretyship[,]" to be "*[t]he person primarily liable*, for whose performance of *his* obligation the . . . surety has become bound." *Id.* at 1073 (emphasis added). Clearly, the bond in no way altered the potential liability of Peabody.

-9-

[w]here a mechanic's lien has been discharged by the giving of a bond the lienor may do either one of two things. He may bring an action to foreclose the lien against the debtor alone, and if he recovers a judgment establishing the validity of the lien and its amount, then maintain an action against the surety on the bond; or he may bring an action in equity against the debtor and the surety on the bond and obtain therein a judgment establishing the validity and amount of the lien and a personal judgment against the judgment debtor and the surety on the bond.

*Pierce, Butler & Pierce Mfg. Co. v. Wilson*, 103 N.Y.S. 678 (1907) (internal citations omitted); *see also* 56 C.J.S. *Mechanics' Liens* § 269 (1992). In the present case AmSouth chose to pursue the first option which, considerations of judicial economy notwithstanding, was entirely proper.

In its order granting Peabody summary judgment, the trial court found that "[b]ecause Peabody Place has filed a bond . . . to discharge AmSouth's lien . . . the lien is hereby discharged and . . . AmSouth is not entitled to further encumber and/or attach Peabody Place's real property." This statement is entirely correct, for the purpose and effect of the bond is to prevent AmSouth from looking to the real property to satisfy the judgment. The bond forces AmSouth to look instead to Peabody and its surety for payment of any judgment received. A determination that AmSouth would have been able to enforce its lien, absent the bond, does not result in an encumbrance of the property, but merely allows for an action on the bond.

The propriety of the parties notwithstanding, in the present case the lien represents security for funds owed to AmSouth for "steel erection work . . . performed on behalf of [Peabody] by AmSouth pursuant to a written agreement between AmSouth and [Skaggs]." AmSouth also brought suit against Skaggs for breach of contract in an attempt to recover these funds. Accordingly, the lien secures any judgment which AmSouth may receive on its unjust enrichment/quantum meruit claim against Peabody. As that claim was properly dismissed, as having been brought prematurely, the suit to enforce the lien which secures any judgment received by AmSouth on the unjust enrichment claim must also fail for the same reason. Accordingly, summary judgment on this issue was properly granted and is, therefore, affirmed. This in no way affects AmSouth's ability to subsequently collect on the bond.[14]

### *Conclusion*

For the foregoing reasons, we affirm the grant of summary judgment to both Tri-Tech and Peabody as to the breach of contract claims, as well as the negligence and negligent misrepresentation claims. We affirm the grant of summary judgment on AmSouth's claim to enforce its lien. We affirm the grant of summary judgment on the unjust enrichment claim, to the

---

[14]"The lien shall continue for the period of ninety (90) days from the date of the notice in favor of the such subcontractor . . . and until the final termination of any suit for enforcement brought within that period." Tenn. Code Ann. § 66-11-115(c) (1993). Thus, the dismissal of the action to enforce the lien makes an action to collect on the bond the only available means of future recovery.

extent that it relates to funds owed under the AmSouth-Skaggs contract. We reverse the grant of summary judgment on the unjust enrichment claim to the extent that it relates to work performed outside the AmSouth-Skaggs contract, at the direction of Peabody or its agents. The costs of this appeal are taxed as follows: one-third each to the Appellees, Peabody and Tri-Tech, and one-third to the Appellant, AmSouth, and its surety for which execution, if necessary, may issue.

 

_____

DAVID R. FARMER, JUDGE