IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JANUARY 18, 2007 Session

# DOUGLAS McPHERSON v. SHEA EAR CLINIC, ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-003839-03     Jon Kerry Blackwood, Judge, by designation**

_____

**No. W2006-01936-COA-R3-CV - Filed April 27, 2007**

_____

This case involves an ear clinic, a patient, and his physician. The patient did not have health insurance, but he was enrolled in a type of discount plan that contracts with healthcare providers to secure reduced rates on medical services for the plan's members. The patient scheduled a treatment with the ear clinic, and he believed that the clinic and his physician participated in the discount plan. The patient underwent pre-surgery testing before learning that neither the clinic nor the physician accepted the discount plan. The patient refused to pay full price for the treatment, and it was never performed. However, the patient was billed for the pre-surgery testing. The patient filed suit against the clinic and his physician for breach of contract, but the trial court dismissed his complaint for failure to state a claim. The patient appealed to this Court, and we reversed. We also instructed the trial court to address the patient's concerns that the court had not accommodated his hearing disability as required by the Americans with Disabilities Act. On remand, the Tennessee Supreme Court assigned a senior judge to preside over the case, and it appears that no oral proceedings took place thereafter. However, the patient attempted to join Shelby County, various county officials, and officers of the court as defendants, claiming that he had been damaged by the county and court's failure to accommodate his disability. The patient also amended his complaint to add claims for medical malpractice and fraud against the clinic and his physician. The trial court denied the patient's petition for joinder of the claims against the additional defendants. The court granted summary judgment to the clinic and physician on the breach of contract and medical malpractice claims, and the claim for fraud was dismissed for failure to state a cause of action. For the following reasons, we affirm.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Douglas McPherson, Columbia, TN, _pro se_

Jeffrey A. Land, Kristin N. Marks, Nashville, TN, for Appellees

**OPINION**

## I.  FACTS & PROCEDURAL HISTORY

Douglas McPherson suffers from a hearing disability.  In 2002, Dr. John J. Shea, Jr. of the Shea Ear Clinic in Memphis, Tennessee, recommended that Mr. McPherson schedule an office visit and treatment known as xylocaine perfusion.  On or about December 9, 2002, Mr. McPherson contacted the clinic and requested the earliest appointment available.  He was scheduled to receive the xylocaine perfusion on January 13, 2003.

Mr. McPherson was a member of a Private Healthcare Systems (PHCS) plan known as "Care Entree."  Care Entree is not an insurance plan, but it enrolls members for a monthly fee and provides them with discounts on medical services through a contracted network of healthcare "Providers."  Mr. McPherson believed that Dr. Shea and Shea Ear Clinic were participating Providers in the Care Entree plan.  He claims that Care Entree's website listed Dr. Shea and the clinic as participating Providers, and that he spoke with Care Entree's Member Services by phone to confirm that Dr. Shea and the clinic were current Providers.

When Mr. McPherson arrived at the clinic on January 13, he signed the necessary paperwork and presented his Care Entree card to clinic personnel.  Mr. McPherson did not question the staff's reference to "insurance" forms, and he later explained that he had assumed the staff would be knowledgeable about the proper paperwork and procedures to be used by a Care Entree Provider.  Mr. McPherson then underwent several hours of pre-surgery testing that was administered by Dr. Shea and other members of the clinic's staff.  Mr. McPherson subsequently learned that neither Dr. Shea nor the clinic were participating Providers in Care Entree.  Because Care Entree was not an insurance plan, the clinic staff informed Mr. McPherson that he would have to pay cash prior to receiving the xylocaine perfusion treatment.  In addition, the cost would be $3,031 beyond the contracted charge fee listed by Care Entree's plan, which Mr. McPherson had expected to pay.  Mr. McPherson refused to pay the additional charge, and the xylocaine perfusion treatment was never rendered.  Mr. McPherson was charged $860 for the pre-surgery testing and a 30% "collection fee" for contested billing, totaling $1,118.

In May of 2003, Mr. McPherson, proceeding pro se, filed a civil warrant in Shelby County General Sessions Court naming Dr. Shea and Shea Ear Clinic as defendants.[1]  Mr. McPherson alleged that the defendants were contractually obligated under the Care Entree medical plan to provide xylocaine perfusion treatment to him for the contracted charge fee.  Judgment was entered for the defendants, and Mr. McPherson appealed to Shelby County Circuit Court.  The circuit court then dismissed Mr. McPherson's complaint for failure to state a claim upon which relief can be granted.  Mr. McPherson then appealed to this Court.  *See **McPherson v. Shea Ear Clinic, P.A.**,* No.

---

[1]  It appears that Mr. McPherson had previously filed suit in Maury County General Sessions Court, and the case was dismissed for improper venue.

W2004-00690-COA-R3CV, 2005 WL 1220160 (Tenn. Ct. App. W.S. May 18, 2005). On appeal, we found that Mr. McPherson's complaint, when liberally construed, did state a cause of action. Therefore, we remanded the case for further proceedings.[2] Mr. McPherson also complained that the trial court had failed to grant him accommodations regarding his hearing loss as required by the Americans with Disabilities Act. We instructed the trial court to "address this issue" upon remand.

Mr. McPherson subsequently requested a "summary recusal of Shelby County," and the Tennessee Supreme Court designated Senior Judge Jon Kerry Blackwood to hear the case to its conclusion. It appears that no oral hearings or communications took place thereafter.

Mr. McPherson filed an amended complaint alleging breach of contract, fraud, and "professional malpractice and negligence" against Dr. Shea and Shea Ear Clinic. He also filed a Petition for Joinder of Claims and Joinder of Persons Needed for Just Adjudication pursuant to Tennessee Rules of Civil Procedure 18 and 19. Mr. McPherson requested that Shelby County, various Shelby County officials, and officers of the court be added as defendants because of alleged wrongs he had suffered during the course of the litigation. It also appears that Mr. McPherson sought a declaratory judgment regarding the Americans with Disabilities Act and Due Process issues, although his petition is not found in the record.

The defendants filed an amended motion for summary judgment, accompanied by the affidavits of Dr. Shea and Mr. John R. Gross, the business manager for Shea Ear Clinic. Mr. McPherson filed various "responses" to the motion, but he did not produce additional evidence. On July 12, 2006, Judge Blackwood entered an order with the following findings:

> (A)    Plaintiff alleges that the Defendant is guilty of professional negligence. The affidavit of Dr. Shea establishes that he is familiar with the recognized standard of acceptable professional practice of physicians practicing his specialty and that he complied with the recognized standard of acceptable practices in his treatment of Plaintiff;
> (B)    There is no countervailing evidence, therefore the Motion for Summary Judgment as to the claim of professional negligence is granted;
> (C)    Plaintiff claims that the Defendant is guilty of breach of contract;
> (D)    The affidavits of John Shea and John R. Cross [sic] are uncontradicted and the Motion for Summary Judgment filed

---

[2] The record presently before us contains only the technical record of proceedings taking place after we remanded the case to the Shelby County Circuit Court. Some of the factual history mentioned in this opinion has been taken from our prior opinion in *McPherson v. Shea Ear Clinic, P.A.*, No. W2004-00690-COA-R3CV, 2005 WL 1220160 (Tenn. Ct. App. W.S. May 18, 2005).

by the Defendant regarding the claim of breach of contract is granted; and

(E)     The Complaint alleges fraud. Plaintiff's complaint fails to state a cause of action alleging fraud and is hereby dismissed.

As part of this Record, the Plaintiff has filed a "Petition for Declaratory Judgment Involving Americans with Disability Act and Due Process of Law and Affidavit of Douglas McPherson" dated June 5, 2006. The alleged Petition seeks to introduce new parties to this cause, as well as a new cause of action not applicable to the Defendant.

The Court dismisses the purported Petition treating same as an attempt to amend the pleading.

Mr. McPherson timely filed his notice of appeal to this Court.

## II.  ISSUES PRESENTED

Mr. McPherson presents the following issues, as we perceive them, for our review:

1.     Whether the trial court wrongfully granted summary dismissal of his claims.
2.     Whether the trial court failed to comply with the mandates of the Tennessee Court of Appeals because it did not provide remedy for Americans with Disabilities Act violations.
3.     Whether Mr. McPherson's due process rights were violated by various procedural actions taken in the trial court.

For the following reasons, we affirm the decision of the circuit court.

## III.  STANDARD OF REVIEW

On appeal, a trial court's factual findings are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d) (2006); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

## IV.  DISCUSSION

### A.   Summary Dismissal of Claims against Dr. Shea and Shea Ear Clinic

#### 1.   Breach of Contract

Mr. McPherson originally brought suit against Dr. Shea and the clinic on a breach of contract theory.[3]  His amended complaint contained the following allegations setting forth his claim:

> On January 13, 2003, Plaintiff was scheduled to undergo a remedial corrective laser injected treatment known as "xylocaine perfusion" at the Shea Ear Clinic in Memphis, that had been arranged at a contracted fee covered under a medical plan.
>
> . . .
>
> *Pursuant to their participation in the Care Entree medical plan*, Defendant Shea was *contractually obligated* to provide [xylocaine perfusion] for a "contracted charge" to members enrolled in the Care Entree medical plan that marketed these "Provider" services, including using internet exposure.
> . . .
>
> The understanding between the parties was that Defendant's [xylocaine perfusion] services would be paid by Plaintiff on January 13, 2003 at the "contracted charge" covered by the Care Entree medical plan that Defendant Shea participated in as a "Provider" medical facility and doctor under the specialty heading of "Otolaryngology."

---

[3] Mr. McPherson insists that when this Court reversed the trial court's finding that his complaint failed to state a claim, we meant that his claim should not be summarily dismissed and that he was entitled to a full trial on remand. He quotes the following language from our previous opinion: "Circuit courts should not dismiss cases appealed from general sessions court because of 'any informality whatever, *but shall be tried on its merits*; . . .'" ***McPherson v. Shea Ear Clinic, P.A.***, No. W2004-00690-COA-R3CV, 2005 WL 1220160, at *3 (Tenn. Ct. App. W.S. May 18, 2005) (citing Tenn. Code Ann. § 16-15-729 (Supp. 2004) (emphasis added). The cited statute instructs courts not to dismiss cases appealed from general sessions courts based upon informalities.

Contrary to Mr. McPherson's assertions, we merely held that, despite the form of Mr. McPherson's complaint, when liberally construed it did state a claim upon which relief could be granted. This finding did not preclude the trial court from subsequently granting summary judgment to the defendants. Summary judgment motions are governed by different standards, which allow courts to consider additional materials beyond the complaint to determine whether there is support for a plaintiff's allegations. *See* Tenn. R. Civ. P. 56.04 (2006). Therefore, an appellate court's finding that a complaint states a valid claim does not necessarily mean that summary judgment will be improper. *See, e.g.*, ***McKenzie v. BellSouth Telecommunications, Inc.***, 219 F.3d 508, 513 (C.A.6 (Tenn.) 2000) ("our holding on a motion to dismiss does not establish the law of the case for purposes of summary judgment, when the complaint has been supplemented by discovery").

. . .

> . . . Defendant Shea as "Provider" was *contractually obligated to honor the pre-arranged fee established under the Care Entree medical plan . . . .* Defendant's refusal to provide scheduled health care services for a pre-arranged fee established under the medical *plan that both Plaintiff and Defendant were parties to*, constitutes a "Breach of Contract."

(emphasis added). We interpret Mr. McPherson's complaint as an attempt to recover as a third-party beneficiary of a contract between Care Entree and Dr. Shea and/or the clinic. There is no indication of an independent agreement between Mr. McPherson and Dr. Shea to have the surgery performed at the reduced rate.[4] Mr. McPherson contends that both he and the defendants were parties to the Care Entree plan, and therefore Dr. Shea was contractually required to perform the treatment at a certain fee.

A third party may enforce a contract if he is an "intended beneficiary" of the contract. ***Owner-Operator Indep. Drivers Ass'n, Inc. v. Concord EFS, Inc.***, 59 S.W.3d 63, 68 (Tenn. 2001). Although contracts are presumed to be executed for the benefit of the parties thereto, and not third persons, there is an exception when the contracting parties express an intent that the benefits of the contract flow to a third party. ***Id.*** Still, the "non-party who wishes to enforce a contract has the burden of proving that he is entitled to recover as a third-party beneficiary." ***Smith v. Chattanooga Med. Investors, Inc.***, 62 S.W.3d 178, 185 (Tenn. Ct. App. 2001) (citing *Moore Constr. Co. v. Clarksville Dept. of Elec.*, 707 S.W.2d 1, 9 (Tenn. Ct. App. 1985)).

In order to maintain such an action, the third party must establish that a valid contract was made upon sufficient consideration between the principal parties. ***Owner-Operator***, 59 S.W.3d at 68; ***First Tenn. Bank Nat'l Ass'n v. Thoroughbred Motor Cars, Inc.***, 932 S.W.2d 928, 930 (Tenn. Ct. App. 1996); ***United Am. Bank of Memphis v. Gardner***, 706 S.W.2d 639, 641 (Tenn. Ct. App. 1985). The third party's rights "depend upon and are measured by" the terms of the underlying contract. ***Benton v. Vanderbilt Univ.***, 137 S.W.3d 614, 618 (Tenn. 2004) (quoting *United States Fid. & Guar. Co. v. Elam*, 198 Tenn. 194, 278 S.W.2d 693, 702 (1955)). Accordingly, the third party's rights hinge upon the validity of the underlying contract and are subject to all the equitable defenses the promisor could assert against the promisee. ***Linehan v. Allstate Ins. Co.***, No. 01A01-9308-CH-00387, 1994 WL 164113, at *3 (Tenn. Ct. App. M.S. May 4, 1994). A third party beneficiary's rights do not exceed the rights of a party to the contract. ***Rentenbach Constructors, Inc. v. Bowen***, No. E2000-1213-COA-R3-CV, slip op. at 4 (Tenn. Ct. App. E.S. Nov. 13, 2000).

---

[4] Although the complaint does mention an "understanding between the parties" that Mr. McPherson would only be responsible for paying the contracted charge listed by the Care Entree plan, Mr. McPherson did not set forth any facts demonstrating that this was any more than his own understanding. There is no evidence of a discussion between the parties to this case about the reduced contracted charge or the status of Dr. Shea and the clinic as Care Entree Providers. Instead, Mr. McPherson apparently relied upon the representations of Care Entree as to Dr. Shea's Provider status and the charges to be paid.

In Mr. McPherson's complaint, he alleged that Shea Ear Clinic and Dr. Shea participated in the Care Entree medical plan. He stated that Dr. Shea's services were being marketed by Care Entree's website at the time of his surgery, and he claimed that Care Entree's Member Services Department assured him by telephone that Dr. Shea was a current Provider. To support his allegation, Mr. McPherson attached as an exhibit a printed page bearing the Private Healthcare Systems logo that listed Dr. Shea's name under "Providers."

Dr. Shea submitted his own affidavit in support of the defendants' motion for summary judgment. He explained that he was the president of Shea Ear Clinic and familiar with its books, records, and accounts. Dr. Shea stated that at all times relevant, Shea Ear Clinic does not participate and has not been a participating provider with the Care Entree plan. He then stated that "at no time" did Shea Ear Clinic ever inform Mr. McPherson that it was a participating provider in the Care Entree plan. According to Dr. Shea, Mr. McPherson had simply presented his Care Entree card when asked for his insurance card. When a Shea Ear Clinic employee called the telephone number listed on the card, they learned that Care Entree was not an insurance provider. After determining that Mr. McPherson had no health insurance, a demand was made for an advance cash payment.

Mr. McPherson submitted "responses" to the defendants' motion for summary judgment and accompanying memorandum of law, statement of uncontested facts, and the affidavit of Mr. Gross. He did not, however, submit affidavits or other material setting forth specific facts to support his contention that Shea Ear Clinic was a Provider with Care Entree. The trial court granted summary judgment to the defendants on the claim because the affidavits of Dr. Shea and Mr. Gross were uncontradicted. Therefore, we must determine whether the defendants' summary judgment motion was properly supported so that the burden shifted to Mr. McPherson to set forth specific facts showing that a genuine issue existed for trial.

A party seeking summary judgment has the burden of demonstrating to the court that there are no disputed, material facts creating a genuine issue for trial, and that he is entitled to judgment as a matter of law. *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). "A conclusory assertion that the nonmoving party has no evidence is clearly insufficient." *Id.* Instead, the moving party could make the required showing by affirmatively *negating* an essential element of the nonmoving party's claim. *Id.* at 216, n.5.

If the moving party does affirmatively negate an essential element of the claim, the burden then shifts to the nonmoving party to set forth specific facts, not legal conclusions, by using affidavits or discovery materials, establishing that there are indeed disputed, material facts creating a genuine issue that needs to be resolved by the trier of fact, and that a trial is therefore necessary. *Byrd*, 847 S.W.2d at 215. The nonmoving party "may not rest upon the mere allegations or denials of [his or her] pleading, but his or her response, by affidavits or as otherwise provided . . . must set forth specific facts showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06 (2006). The nonmovant could satisfy his burden by (i) pointing to evidence overlooked or ignored by the moving party that establishes a material factual dispute, (ii) rehabilitating the evidence attacked in the moving party's papers, (iii) producing additional evidence showing the existence of a genuine

issue for trial, or (iv) submitting an affidavit explaining why further discovery is necessary.  ***Byrd***, 847 S.W.2d at 216, n.6.  "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."  Tenn. R. Civ. P. 56.06 (2006).

On the other hand, "[i]f the movant does not negate a claimed basis for the suit, the non-movant's burden to produce either supporting affidavits or discovery materials is not triggered and the motion for summary judgment fails."  ***McCarley v. West Quality Food Serv.***, 960 S.W.2d 585, 588 (Tenn. 1998).  The material supporting the movant's motion for summary judgment "must do more than 'nip at the heels' of an essential element of a cause of action; it must *negate* that element."  ***Lawson v. Edgewater Hotels, Inc.***, 167 S.W.3d 816, 825 (quoting *Madison v. Love*, No. E2000-01692-COA-RM-CV, 2000 WL 1036362, at *2 (Tenn. Ct. App. E.S.  July 28, 2000)).

The following cases are particularly instructive on "the proper standard and burden shifting analysis applicable to summary judgment dispositions . . . ."  ***McCarley***, 960 S.W.2d at 587.  First, in ***McCarley***, which involved food poisoning, a restaurant moved for summary judgment and attempted to demonstrate that the plaintiff could not establish causation because he had eaten other types of possibly contaminated meat on the same day.  ***Id.*** at 588.  The Tennessee Supreme Court found that the assertions may have caused doubt as to causation, but they did not *negate* the restaurant's food from the list of possible causes.  ***Id.***  Accordingly, a genuine issue of material fact still existed as to causation, and the nonmovant's burden to respond had not been triggered.  ***Id.***

In ***Lawson***, a plaintiff claimed to have been injured by improper ventilation levels in a hotel's pool area. 167 S.W.3d at 824-25.  The hotel moved for summary judgment and proffered evidence showing it was unlikely that the ventilation system would have been turned off.  ***Id.*** at 824.  Still, without evidence unequivocally showing that the pool *was* properly ventilated when used, the hotel's evidence merely cast doubt on the plaintiff's claim.  ***Id.*** at 825.  The hotel had not *negated* an element of the cause of action.  ***Id.***

Finally, in ***Madison v. Love***, No. E2000-01692-COA-RM-CV, 2000 WL 1036362, at *2 (Tenn. Ct. App. E.S.  July 28, 2000), a nightclub had been sued for failure to render aid to a patron who collapsed and later died.  The defendant moved for summary judgment and submitted the affidavit of a pathologist who stated that the cause of death of the patron was unknown.  ***Id.*** at *1.  Still, the affidavit was held not to have negated the element of causation.  ***Id.*** at *2.  "An affidavit which simply casts doubt on a plaintiff's claim is not sufficient to require the plaintiff to engage in a battle of facts 'on the papers.'"  ***Id.***  Rather, it must conclusively negate an essential element of the claim.  ***Id.***  In that case, the defendant would have had to present testimony that its failure to render aid *did not* cause or contribute to the death.  ***Id.***

In the case before us, we conclude that the defendants met their burden of negating an essential element of Mr. McPherson's claim for breach of contract.  Dr. Shea's affidavit did more than cast doubt upon Mr. McPherson's claim.  Dr. Shea's testimony that Shea Ear Clinic does not participate and has not participated in the Care Entree plan affirmatively negates an essential element of Mr. McPherson's claim.  If there was no contract between Care Entree and Dr. Shea or Shea Ear Clinic, then Mr. McPherson could not assert a third party beneficiary claim to enforce any contractual rights.

After the defendants submitted their properly supported motion for summary judgment negating an essential element of Mr. McPherson's case, the burden shifted to Mr. McPherson "to set forth specific facts, not legal conclusions," establishing that there were indeed disputed, material facts creating a genuine issue for trial. Mr. McPherson failed to do so. He was unable to meet his burden with regard to this dispositive element of his contract claim, an element on which he would have had the burden of proof at trial. Thus, summary judgment was appropriate.

## 2. Medical Malpractice

Mr. McPherson alleged in his amended complaint that the defendants' acts constituted "Professional Malpractice and Negligence." Specifically, his complaint reads as follows:

> 6. A most significant consequence and direct and proximate cause of the acts, omissions and misconduct of Defendant Shea, is that the relationship and confidence has been severed between Plaintiff/patient and Defendant/medical facility/doctor, believed to be the foremost authority and sole provider of "xylocaine perfusion" surgery. Because the relationship and confidence has been severed, Plaintiff remains denied a highly specialized remedial treatment as his first choice of health care, and continues to suffer from un-treated hearing disability, which Defendant's highly specialized and withheld services might have alleviated. Defendant Shea's actions constitute "Professional Malpractice and Negligence."

In support of the defendants' motion for summary judgment, Dr. Shea submitted his own affidavit stating his familiarity with the recognized standard of acceptable professional practice applicable to his specialty, and that he, Shea Ear Clinic, and its employees complied with that standard at all times in the practices, treatments, and procedures involving Mr. McPherson.

Mr. McPherson later filed a response stating that he "reject[ed] Defendant's inaccurate characterization that: 'This is a medical malpractice action pursuant to T.C.A. § 29-26-115.'" He explained that the case was initially brought as a "breach of contract" case. However, he later stated in a separate response that "the Defendant's refused to comply with acceptable professional practice by withholding services that were pre-arranged and contractually obligated to honor and provide to Plaintiff."

Nonetheless, we find that summary judgment was properly granted to the defendants on this issue. When patients file a medical malpractice suit,[5] they carry the burden of proving: (1) the recognized standard of professional care, (2) that the defendant failed to act in accordance with the applicable standard of care, and (3) that as a proximate result of the defendant's negligent act or omission, the claimant suffered an injury which otherwise would not have occurred. Tenn. Code

---

[5] We treat Mr. McPherson's claim as one for medical malpractice rather than common law negligence because the alleged negligent conduct "bears a substantial relationship to the rendition of medical treatment by a medical professional." *See Gunter v. Lab. Corp. of Am.*, 121 S.W.3d 636, 640 (Tenn. 2003); *Ward v. Glover*, 206 S.W.3d 17, 25 (Tenn. Ct. App. 2006).

Ann. § 29-26-115(a) (Supp. 2006). The significance of a patient's burden has been described as follows:

> It is now commonplace for medical practitioners to use these statutory requirements to put their patient's claim to the test by forcing them to reveal the identity of their testifying experts early in the litigation. The practitioners' chosen vehicle is a motion for summary judgment supported by their own self-serving affidavit stating that their conduct neither violated the applicable standard of care nor caused injury to their patient that would not otherwise have occurred. An affidavit of this sort effectively negates the negligence allegations in the patient's complaint and effectively forces the patient to demonstrate the existence of a genuine, material factual dispute warranting a jury trial. *Finister v. Humboldt Gen. Hosp., Inc.*, 970 S.W.2d 435, 438 (Tenn. 1998); *Dunham v. Stones River Hosp., Inc.*, 40 S.W.3d 47, 51 (Tenn. Ct. App. 2000).
>
> Patients faced with their physician's summary judgment motion cannot rest on the allegations in their complaint. Tenn. R. Civ. P. 56.06; *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Blocker v. Regional Med. Ctr. at Memphis*, 722 S.W.2d 660, 661 (Tenn. 1987). They must demonstrate the existence of triable factual disputes either by (1) pointing to evidence ignored or overlooked by the physician, (2) rehabilitating evidence attacked by the physician, or (3) producing additional evidence establishing the existence of a genuine factual issue. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 45 S.W.3d 588, 598 (Tenn. Ct. App. 2001).

**Kenyon v. Handal**, 122 S.W.3d 743, 758 (Tenn. Ct. App. 2003) (footnotes omitted). Mr. McPherson failed to allege the statutory elements of a medical malpractice claim, and he failed to properly respond to the defendants' motion for summary judgment by demonstrating that a triable factual dispute existed. Therefore, summary judgment was proper.

### 3. Fraud

The trial court's final order stated that Mr. McPherson's complaint "fails to state a cause of action alleging fraud," and accordingly, the claim was dismissed.

Tenn. R. Civ. P. 8.01 (2006) provides that a pleading which sets forth a claim for relief shall contain a short and plain statement of the claim showing that the pleader is entitled to relief. Although a complaint need not contain in minute detail the facts that give rise to the claim, it either must contain direct allegations on every material point necessary to sustain a recovery on any legal theory (even though it may not be the theory suggested by the pleader) or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial. **Leach v. Taylor**, 124 S.W.3d 87, 92 (Tenn. 2004); **Donaldson v. Donaldson**, 557 S.W.2d 60,

61 (Tenn. 1977). A motion to dismiss for failure to state a claim only tests the sufficiency of the complaint, seeking to determine whether the pleadings state a claim upon which relief can be granted. **Trau-Med of Am., Inc. v. Allstate Ins. Co.**, 71 S.W.3d 691, 696 (Tenn. 2002); **Smith v. First Union Nat. Bank of Tenn.**, 958 S.W.2d 113, 114-115 (Tenn. Ct. App. 1997). The basis for the motion is that the allegations in the complaint, when considered alone and taken as true, are insufficient to state a claim as a matter of law because they do not constitute a cause of action. **Smith**, 958 S.W.2d at 115 (citations omitted). In making this determination, we construe the complaint liberally in favor of the plaintiff, taking all allegations of fact therein as true. **Id.** (citing *Fuerst v. Methodist Hosp. South*, 566 S.W.2d 847, 848-49 (Tenn. 1978); *Holloway v. Putnam County*, 534 S.W.2d 292, 296 (Tenn. 1976)). However, "[t]here is no duty on the part of the court to create a claim that the pleader does not spell out in his complaint." **Trau-Med**, 71 S.W.3d at 704 (quoting *Donaldson*, 557 S.W.2d at 62). Where "no claim for relief is stated by a party, a court may properly dismiss the action, either on motion or sua sponte." **Donaldson**, 557 S.W.2d at 62 (citations omitted).

Allegations of fraud must be stated with particularity. Tenn. R. Civ. P. 9.02 (2006). The party alleging fraud bears the burden of proving every necessary and material element of fraud. **Hiller v. Hailey**, 915 S.W.2d 800, 803 (Tenn. Ct. App. 1995) (quoting *Williams v. Spinks*, 7 Tenn. App. 488 (1928)). "Fraud is never presumed; and where it is alleged the facts sustaining it must be clearly made out." **Id.** (quoting *Bevins v. Livesay*, 32 Tenn. App. 1, 221 S.W.2d 106, 109 (1949)). Even so, it suffices if the facts alleged constitute fraud, and they need not be expressly characterized using the term "fraud." **Maxwell v. Land Developers, Inc.**, 485 S.W.2d 869, 876 (Tenn. Ct. App. 1972).

A common law cause of action for fraud has been defined as follows:

> When a party intentionally misrepresents a material fact or produces a false impression in order to mislead another or to obtain an undue advantage over him, there is a positive fraud. The representation must have been made with knowledge of its falsity and with a fraudulent intent. The representation must have been to an existing fact which is material and the plaintiff must have reasonably relied upon that misrepresentation to his injury.

**Black v. Black**, 166 S.W.3d 699, 705 (Tenn. 2005) (quoting *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66-67 (Tenn. 2001)). Thus, a plaintiff alleging fraudulent misrepresentation must address the following elements with particularity: 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damage as a result of the misrepresentation. **Metropolitan Gov't of Nashville and Davidson County v. McKinney**, 852 S.W.2d 233, 237 (Tenn. Ct. App. 1992) (citing *Graham v. First Am. Nat'l Bank*, 594 S.W.2d 723, 725 (Tenn. Ct. App. 1979)).

Mr. McPherson's complaint had set forth his claim for fraud, in relevant part, as follows:

> Defendant Shea as a medical care "Provider" harmfully failed to notify Plaintiff prior to the afternoon of January 13, 2003, that scheduled [xylocaine perfusion] services would not be provided for the pre-arranged, established fee, and only after Plaintiff had been subjected to and undergone a half day of pre-surgery testing. Even though Defendant Shea as "Provider" was contractually obligated to honor the pre-arranged fee established under the Care Entree medical plan, Defendant Shea refused to provide the scheduled surgery unless Plaintiff would pay $3,031 more in addition to costs he had originally agreed to.
>
> . . .
>
> Defendant Shea's failure to provide advance notice of their intention to commit a breach of contract, constitutes an anticipated "Fraudulent Act Under False Pretenses Without Full Disclosure." As direct and proximate cause of the acts, omissions and misconduct of Defendant Shea, Plaintiff has suffered being denied highly specialized remedial "xylocaine perfusion" otolaryngology surgery as his first choice of health care.

Thus, Mr. McPherson claimed that Shea Ear Clinic's failure to inform him that he would have to pay more than the contracted charge fee listed by the Care Entree plan constituted fraud.

Nondisclosure of a material fact may also give rise to a claim for fraudulent misrepresentation when the defendant has a duty to disclose and the matters not disclosed are material. *Justice v. Anderson County*, 955 S.W.2d 613, 616 (Tenn. Ct. App. 1997) (citing *Dobbs v. Guenther*, 846 S.W.2d 270, 274 (Tenn. Ct. App. 1992)). For concealment or nondisclosure to constitute fraud, the party charged with fraud must have had knowledge of an existing fact or condition and a duty to disclose the fact or condition. *Hill v. John Banks Buick, Inc.*, 875 S.W.2d 667, 670 (Tenn. Ct. App. 1993); *Lonning v. Jim Walter Homes, Inc.*, 725 S.W.2d 682, 685 (Tenn. Ct. App. 1986); *Dozier v. Hawthorne Dev. Co.*, 37 Tenn. App. 279, 292, 262 S.W.2d 705, 711 (1953). "Obviously, a party must have knowledge of a material fact before a duty arises to disclose it . . . ." *Twitty v. Young*, No. 03A01-9801-CH-00031, slip op. at 7 (Tenn. Ct. App. E.S. Aug. 6, 1998). The defendant's knowledge of a fact is an essential element of a fraudulent concealment or fraudulent nondisclosure claim. *See Chrisman v. Hill Home Dev., Inc.*, 978 S.W.2d 535, 539 (Tenn. 1998) (fraudulent concealment claim failed because plaintiffs could not prove defendant had knowledge of a fact); *Dunnivant v. Evetts*, Robertson Chancery, App. No. 87-170-II, 1988 WL 102782, at *5 (Tenn. Ct. App. M.S. Oct. 7, 1988) (defendants not liable for fraudulent nondisclosure if they had no knowledge of a fact).

In this case, there is no indication that Shea Ear Clinic had knowledge of the fact that Mr. McPherson was relying on the price listed by Care Entree as the price he would be charged for his surgery. There are no facts presented to indicate that Mr. McPherson ever discussed the Care Entree plan or the contracted charge fee with Dr. Shea or Shea Ear Clinic. Without knowledge of Mr. McPherson's expectations, Shea Ear Clinic could not correct his misunderstanding. Shea Ear Clinic

could not inform Mr. McPherson that it did not participate in the Care Entree plan until its staff learned the details of the plan later in the afternoon.[6] In sum, Shea Ear Clinic had no duty to disclose that Mr. McPherson would have to pay more than the contracted charge fee until it learned that he intended to pay this amount.

Mr. McPherson's complaint fails to identify with particularity facts sufficient to sustain a claim of fraud, and we affirm the trial court's dismissal of the claim.

### B. Alleged Violations of the Americans with Disabilities Act

In our previous opinion remanding this case to the trial court, we instructed the court to address the issue of alleged ADA violations occurring in the trial court. Mr. McPherson claimed that the trial court had failed to grant him accommodations for his hearing disability. The Tennessee Supreme Court subsequently designated Senior Judge Blackwood to hear the case to its conclusion, and no oral hearings or communications took place thereafter. Since the trial court decided this summary judgment motion "on the paper," Mr. McPherson's hearing disability was no longer an issue. There is no indication in the record before us of any disability that would have affected his ability to review the motion for summary judgment and prepare a response. Mr. McPherson does not complain that the trial court failed to accommodate him on remand.

However, Mr. McPherson additionally sought a declaratory judgment regarding the ADA, and he sought to join various claims against Shelby County and its officials for the previous violations of the ADA. The trial judge apparently considered Mr. McPherson's petitions together, and his final order stated: "The alleged Petition seeks to introduce new parties to this cause, as well as a new cause of action[7] not applicable to the Defendant. The Court dismisses the purported Petition treating same as an attempt to amend the pleading."

---

[6] In addition, Mr. McPherson did not allege that he was justified in relying on Shea Ear Clinic's silence as to whether it participated in the Care Entree plan. Justifiable reliance is a necessary element in a cause of action based upon negligent or fraudulent misrepresentation. *McNeil v. Nofal*, 185 S.W.3d 402, 409 (Tenn. Ct. App. 2005). Even false representations alone do not amount to fraud; the plaintiff must have relied upon the representations, and his reliance must have been reasonable under the circumstances. *Security Federal Sav. and Loan Ass'n of Nashville v. Riviera, Ltd.*, 856 S.W.2d 709, 712 (Tenn. Ct. App. 1992). Justifiable reliance is not blind faith, *McNeil*, 185 S.W.3d at 408, and there is no duty to disclose a fact if ordinary diligence would have revealed it. *Lonning*, 725 S.W.2d at 685.

[7] Title II of the ADA, 42 U.S.C. §§ 12131-12165, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." § 12132. The ADA also provides that "a State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter." § 12202. In *Tennessee v. Lane*, 541 U.S. 509, 124 S.Ct. 1978 (U.S. 2004), the Supreme Court held that Title II, as applied to cases implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress's authority to abrogate the States' immunity in order to enforce the guarantees of the Fourteenth Amendment. *Id.* at 533-534; 124 S. Ct. at 1994.

We affirm the trial court's decision not to allow the additional claims and defendants to be joined in the case at bar. Mr. McPherson contended that joinder of Shelby County and its officials was necessary for just adjudication pursuant to Tenn. R. Civ. P. 19.01 (2006). The Rule provides in part:

> A person who is subject to service of process shall be joined as a party if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reasons of the claimed interest.

The record does not disclose that Shelby County claimed any interest relating to the original complaint. *See* Tenn. R. Civ. P. 19.01(2). Thus, it appears that Mr. McPherson's argument for joinder is based upon section (1) of the Rule, which requires joinder if "in the person's absence complete relief cannot be accorded among those already parties." However, we find nothing to indicate that complete relief could not be accorded in this case among Mr. McPherson, Dr. Shea, and Shea Ear Clinic. The presence or absence of Shelby County and its officials as named defendants would have had no bearing on the claims presently before the court involving an alleged breach of contract, medical malpractice, and fraud. Thus, joinder of those claims and the related defendants was not essential to a just adjudication in this case.

### C. Procedural Challenges

#### 1. Consolidation with *Shea Ear Clinic, P.A. v. Douglas McPherson*

Mr. McPherson complains that Shelby County harmfully consolidated Shea Ear Clinic's countersuit with his case. He alleges that the court "adjudicated activity on the record" in the clinic's countersuit prior to his being served with a summons and complaint in the countersuit. He also contends that the countersuit was dismissed for lack of prosecution, but later erroneously reinstated. We recognize that a consolidation of two cases for trial does not make an unserved party to one case a served party in the second case. *Vanhooser v. Ling*, 872 S.W.2d 913, 915 (Tenn. Ct. App. 1993). However, there is nothing in the record for us to review in support of Mr. McPherson's allegations. The only indication in the record that the two cases were ever consolidated is the notation of two different docket numbers on two of Mr. McPherson's filings in the trial court, and on the affidavit of Dr. Shea. Again, the record before us only contains the technical record of proceedings taking place after we remanded the case to the Shelby County Circuit Court. The alleged procedural errors Mr. McPherson addresses took place long before the case was initially appealed to this Court in 2005. The orders and motions Mr. McPherson references in support of his claims are not included in the record.

A party raising issues on appeal is responsible for furnishing the appellate court with a record that will enable that court to reach the issues raised. *Word v. Word*, 937 S.W.2d 931, 933 (Tenn. Ct. App. 1996). "We decide cases and controversies on the basis of the record as presented to us for

-14-

our consideration, and not as they might, or should, have been presented." ***Dearborne v. State***, 575 S.W.2d 259, 264 (Tenn. 1978); *see also* Tenn. R. App. P. 13(c) (2006). As such, we decline to address these alleged procedural errors.

### 2. Summary Judgment Motion Hearing "Lost" from Docket

Mr. McPherson also alleges that his motion for summary judgment was set for hearing on January 9, 2004, but when he appeared in court, his hearing was unaccountably "lost" from the docket agenda. He claims that he was denied due process because he was not given the opportunity to be heard in a fair and timely manner. There is no evidence of any summary judgment motion filed by Mr. McPherson in the record before us. However, even if the facts existed as alleged by Mr. McPherson, there is no indication that he requested that his hearing be rescheduled or that the trial court would not allow him to do so. Parties who failed to take whatever actions were reasonably available to them to prevent or nullify the harmful effect of an error are not entitled to relief on appeal. *See* Tenn. R. App. P. 36(a) (2006). "The timely calling of an error to the attention of the trial court, in many cases, will render an appeal unnecessary. That is the whole purpose behind Tenn. R. App. P. 36(a)." ***Ford v. Ford***, No. E2005-01772-COA-R3-CV, slip op. at 2 (Tenn. Ct. App. E.S. Mar. 30, 2006). Accordingly, we find that this issue is without merit.

### V. CONCLUSION

For the aforementioned reasons, we affirm the decision of the circuit court. Costs of this appeal are taxed to Appellant, Douglas McPherson, for which execution may issue if necessary.

 

 

_____
ALAN E. HIGHERS, JUDGE