IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
ASSIGNED ON BRIEFS MAY 7, 2010

**SELF HELP VENTURES FUND v. GLENNA ROBILIO**

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-000814-07      Jerry Stokes, Judge**

**No. W2009-00368-COA-R3-CV - Filed June 1, 2010**

The *pro se* defendant in an unlawful detainer action appeals an award of summary judgment in favor of the ultimate purchaser at foreclosure. Because the purchaser has demonstrated undisputed facts that show the existence of the elements of its unlawful detainer action, and because the defendant has failed to show the existence of a genuine issue of material fact, we affirm the trial court's grant of summary judgment. We further dismiss the defendant's remaining issues.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Glenna Robilio, Memphis, Tennessee, *pro se*

Harris P. Quinn, Memphis, Tennessee, for the appellee, Self Help Ventures Fund

## OPINION

### I. FACTS & PROCEDURAL HISTORY

A company called Netbank held a Deed of Trust on certain real property owned by Glenna Robilio located at 1109 Perkins Terrace, Memphis, Tennessee (the "Property"). According to the Affidavit of former Netbank Vice President Sally Dover, after Ms. Robilio defaulted in her payment obligations[1] to Netbank under the Deed of Trust, Netbank mailed a letter, dated February 3, 2005, by first class mail to Ms. Robilio at the Property's address. The letter, a copy of which is included in the record before us, reads:

You are hereby notified as follows:

a. You have breached the terms of the deed of trust securing the captioned loan in that you have failed to make the monthly payments which were due on November 01, 2003 through February 03, 2005, inclusive.

b. To cure this breach as of this date you must pay $19388.26 in certified funds, money order or through Western Union Quick Collect service. The amount necessary to cure the breach will increase when additional payment or an additional late charge becomes due.

c. This breach must be cured by 03-05-05.

d. A failure to cure this breach on or before the date specified above will result in acceleration of the sums secured by the deed of trust and will result in a foreclosure sale of your property.

e. If this breach is not cured, foreclosure action will begin in approximately 45 days, and a deficiency judgment may be pursued.

f. This breach may be reported to the credit bureau.

After acceleration you would have the right to reinstate your loan prior to the fifth day before a foreclosure sale of your property by curing all breaches of the terms of the deed of trust and by paying all reasonable expenses incurred by the lender or trustee in enforcing the deed of trust.

---

[1]Ms. Robilio does not argue that she was not in default.

After acceleration you would have the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and sale.

According to Ms. Dover's Affidavit, Ms. Robilio failed to cure her defaults on or before the date specified in the letter, and Netbank exercised its option to accelerate her indebtedness without further demand on Ms. Robilio.

The Affidavit of Netbank attorney Harris P. Quinn indicates that Ms. Robilio filed Chapter 13 Bankruptcy Case No. 05-28888 on June 15, 2005, which was dismissed on July 28, 2005, and Chapter 13 Bankruptcy Case No. 05-31893 on August 5, 2005, which was dismissed on November 18, 2005. A foreclosure sale of the Property was scheduled for March 3, 2006. The following publication appeared in The Daily News, a Memphis newspaper, on February 10, 17 and 24, 2006:

Default having occurred in the payment of the debts and obligations by a certain Deed of Trust executed July 30, 2003 by Glenna F. Robilio, to Kathryn L. Harris, as Trustee . . . this is to give notice that the undersigned will, on Friday, March 3, 2006 commencing at 12:20 p.m. at the main door of the Southwest entrance of the Adams Avenue entrance of the Courthouse, Memphis, Shelby County, Tennessee, proceed to sell at public outcry to the highest and best bidder for cash, the [Property].

. . . .

Interested Parties:    Glenna Robilio
Owner of Debt:         NetBank

All announcements at the sale on the date of the sale will take priority over this notice.

A copy of the Notice of Substitute Trustee Sale was mailed to Ms. Robilio at the Property on February 10, 2006, and the article was signed for by Ms. Robilio as delivered on February 23, 2006. According to Mr. Quinn's Affidavit, on February 28, 2006, Ms. Robilio filed Chapter 13 Case No. 06-21370. She also filed both a Complaint to enjoin the foreclosure sale and a Motion to Impose an Automatic Stay under the Bankruptcy Code. Following a hearing, the bankruptcy court entered an order on March 10, 2006, imposing an automatic

stay; however, the court authorized Netbank to continue the foreclosure sale to another date,[2] with the stipulation that "no deed is to be recorded pending further order of this Court or unless confirmation of Debtor's Chapter 13 Plan is denied or unless the case is dismissed after confirmation[.]" By consent order, the March 10, 2006 order was supplemented to provide that Netbank "shall have the option of continuing the foreclosure sale from time to time by announcement at the foreclosure sale."

In his Supplemental Affidavit, Mr. Quinn states that he "appeared at the main door of the Southwest entrance of the Adams Avenue entrance of the Shelby County Courthouse at 12:20 p.m. on March 3, 2006 and announced that the Substitute Trustee Sale of the Property was being continued to March 31, 2006 at 12:20 p.m." Ms. Robilio did not appear at the scheduled March 3, 2006 Substitute Trustee Sale.

On May 26, 2006, the bankruptcy court entered an "Order Confirming Plan," which provided that "[a]ll property shall remain property of the Chapter 13 estate[.]" Netbank filed an objection, and an agreed order was entered on August 25, 2006, which stated that

> if Netbank fails to receive a monthly ongoing mortgage payment from the Trustee in any month beginning September 2006, then the automatic stay shall be terminated as to Netbank, the subject Property and the proceeds thereof without further notice, hearing, order or ten (10) day stay notwithstanding any future modification of the Plan in which event Debtor shall voluntarily surrender the subject Property to Netbank. [3]

The Trustee's record attached to Mr. Quinn's Affidavit indicates that Netbank did not receive on-going mortgage payment disbursements beginning September 2006. Therefore, after periodic continuances, the Substitute Trustee Sale was scheduled for October 30, 2006 at 12:20 p.m. Attached to Mr. Quinn's Second Supplemental Affidavit is a copy of an e-mail sent by him to Ms. Robilio's attorney, notifying him of the scheduled sale and specifically advising him that he "anticipate[d] that the lender [would] proceed with the sale at that time due to debtor's payment defaults." On October 30, 2006, a foreclosure sale was conducted, and on November 6, 2006, a Successor's Trustee Deed was recorded transferring ownership of the Property to Federal National Mortgage Association ("FNMA").

---

[2] Mr. Quinn states that Ms. Robilio was present in the courtroom when the court authorized the continuance.

[3] The agreed order provided that if Netbank failed to receive its mortgage *arrearage*, that "Netbank may give written notice to Debtor . . . that Debtor is in default . . . and that Debtor needs to cure the default. . . . If Debtor fails to timely cure the default after written notice, then the automatic stay shall be immediately terminated as to Netbank . . . without further notice, hearing order or ten (10) day stay[.]"

On October 25, 2006, just prior to the sale, the bankruptcy court dismissed Ms. Robilio's Chapter 13 case for failure to abide by court orders, and on November 3, 2006, Ms. Robilio filed a Notice of Appeal and a Motion to Impose Automatic Stay in the bankruptcy court. Following a hearing, the bankruptcy court issued an order granting "Ms. Robilio's motion to impose the stay as to all creditors except for Netbank[.]"

On January 3, 2007, FNMA filed the present action, a Forcible Entry and Detainer Warrant in the general sessions court of Shelby County, Tennessee, against Ms. Robilio. On January 26, 2007, Ms. Robilio filed a "Motion to Remand this Case Back to the U.S. Bankruptcy Court for the Six Circuit, Appellate Panel" and a "Motion to Dismiss this Case, It is a Moot Case." Among the various grievances listed was the assertion that NetBank never provided her notice of the foreclosure sale or a payoff statement to allow her to cure the default. On February 5, 2007, the general sessions court granted possession of the Property to FNMA. Ms. Robilio appealed to the circuit court.

FNMA filed a motion for summary judgment in the circuit court on June 20, 2007, seeking a judgment for possession of the Property, which was granted on July 27, 2007. On appeal, we reversed the trial court's grant of summary judgment, finding that FNMA had failed to address Ms. Robilio's arguments regarding lack of notice, thus leaving open a factual question. *Fed. Nat'l Mortgage Ass'n v. Robilio*, No. W2007-01758-COA-R3-CV, 2008 WL 2502114, at *1 (Tenn. Ct. App. June 24, 2008).

Pursuant to a Quit Claim Deed recorded on December 15, 2008, FNMA conveyed all of its right, title and interest in the Property to Self Help Ventures Fund ("SHVF"). The circuit court, on January 16, 2009, entered an order granting FNMA's motion to substitute Self Help Ventures Fund ("SHVF") as plaintiff. Thereafter, on February 17, 2009, SHVF filed a motion for summary judgment, which the trial court granted in an April 7, 2009 order. Ms. Robilio appeals.[4]

## II. ISSUES PRESENTED

Appellant presents the following issues for review, as we perceive them:

1.     Whether the trial court erred in granting SHVF's motion for summary judgment;

_____

[4]Prior to the entry of the final judgment, Ms. Robilio appealed to this Court. Although we found Ms. Robilio's appeal premature, based on her correspondence with this Court after entry of the final judgment which "adequately advised the courts and Appellee that she intended to appeal the trial court's order of April 7, 2009[,]" we waived any procedural insufficiencies in her Notice of Appeal.

2.      Whether the trial court addressed Appellant's evidence/counter complaint; and

3.      Whether Appellant's due process rights were violated.

For the following reasons, we affirm the circuit court's grant of summary judgment to SHVF.

### III.   DISCUSSION

#### A. Summary Judgment

Proceeding *pro se*, Ms. Robilio challenges the trial court's award of summary judgment to SHVF. Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." **Tenn. R. Civ. P. 56.04**. Ruling on a motion for summary judgment does not involve disputed issues of fact, but only questions of law. ***Owner-Operator Indep. Drivers Ass'n v. Concord EFS, Inc.***, 59 S.W.3d 63, 68 (Tenn. 2001). Thus, our standard for reviewing a grant of summary judgment is *de novo* with no presumption of correctness as to the trial court's findings. ***See Webber v. State Farm Mut. Auto. Ins. Co.***, 49 S.W.3d 265, 269 (Tenn. 2001). The evidence must be viewed "in the light most favorable to the nonmoving party," and all reasonable inferences must be drawn in the non-moving party's favor. ***Staples v. CBL & Assocs.***, 15 S.W.3d 83, 89 (Tenn. 2000).

Summary judgment is appropriate only when the moving party can show that there exists no genuine issue of material fact. ***Hannan v. Alltel Publ'g Co.***, 270 S.W.3d 1, 5 (Tenn. 2008) (citing Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993)). There are two burden-shifting methods available when the moving party does not bear the burden of proof: the moving party may either affirmatively negate an essential element of the nonmoving party's claim or establish an affirmative defense. *Id.* (citing *Byrd*, 847 S.W.2d at 215 n.5). However, when the party bearing the burden at trial is the moving party, the moving party may shift the burden "by alleging undisputed facts that show the existence of [an] element [of his or her claim] that entitle the plaintiff to summary judgment as a matter of law." *Id.* at 9 n.6. If this initial burden of production is not satisfied, the motion for summary judgment should be dismissed. *Id.* (citing *Byrd*, 847 S.W.2d at 215). However, if the moving party meets its initial burden, the burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists. *Id.* (citing *Byrd*, 847 S.W.2d at 215).

On appeal, Ms. Robilio contends that she did not receive requisite notice of the foreclosure sale. Therefore, she argues, the foreclosure sale was unauthorized, it failed to

convey Property ownership to SHVF, and SHVF cannot maintain an unlawful detainer action.

Unlawful detainer[5] is found "where the defendant enters by contract, either as tenant or as assignee of a tenant, or as personal representative of a tenant, or as subtenant, or by collusion with a tenant and, in either case, willfully and without force, holds over the possession from the landlord, or the assignee of the remainder or reversion." **Tenn. Code Ann. § 29-18-104**. A landlord/tenant relationship, established by contract is required in order to maintain an unlawful detainer action. *Fed. Nat'l Mortgage Ass'n*, 2008 WL 2502114, at *4. "If the trust deed establishes a landlord/tenant relationship between the mortgagor and foreclosure sale purchaser, then a constructive entry on the part of the purchaser attaches upon the passing of title; this constructive entry provides the basis for maintaining the unlawful detainer action." *Id.* (citing *Metro. Life Ins. Co. v. Moore*, 72 S.W.2d 1050, 1051 (Tenn. 1934); *Griffith v. Brackman*, 37 S.W. 273, 274 (Tenn. 1896)). In this case, SHVF was required to prove both its constructive possession of the Property and its loss of possession by Ms. Robilio's act of unlawful detainer. *Id.* (citing *Accord Foster v. Hill*, 510 S.W.2d 520, 522 (Tenn. Ct. App. 1973)).

We first address Ms. Robilio's argument that SHVF did not constructively possess the Property because Netbank failed to provide her with the requisite notice. "In the unique situation of foreclosures conducted under a power of sale, the requisite landlord/tenant relationship may not arise when the trustee has exercised the power of sale in violation of the deed of trust." *Id.* at *5 (citing *CitiFinancial Mortgage Co., Inc. v. Beasley*, No. W2006-00386-COA-R3-CV, 2007 WL 77289, at *6 (Tenn. Ct. App. Jan. 11, 2007)). The Deed of Trust between Netbank and Ms. Robilio contractually sets forth the manner and content of the notice required to be given by Netbank prior to acceleration or foreclosure:

> 22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement to this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the

---

[5]"Although FED proceedings are considered one type of action, the Tennessee Code identifies separate bases for the recovery of real property by summary proceeding: forcible entry and detainer, Tenn. Code Ann. § 29-18-102 (2000), forcible detainer, Tenn. Code Ann. § 29-18-103 (2000), and unlawful detainer, Tenn. Code Ann. § 29-18-104 (2000)." *Fed. Nat'l Mortgage Ass'n*, 2008 WL 2502114, at *4 n3.

notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Trustee shall give notice of sale by public advertisement in the county in which the Property is located for the time and in the manner provided by Applicable Law, and Lender or Trustee shall mail a copy of the notice of sale to Borrower in the manner provided in Section 15. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and under the terms designated in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, express or implied. . . . If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the Purchaser at the sale. If the possession is not surrendered, Borrower or such person shall be a tenant at will of the purchaser and hereby agrees to pay the purchaser the reasonable rental value of the Property after sale.

Regarding the appropriate means of effecting notice, the Deed of Trust provides in part:

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. . . . If any notice required by this Security Instrument is also required under

Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

According to the Deed of Trust's terms, the lender may invoke the power of sale only after the expiration of the thirty (30) day curative period, which commences only after proper notice of default has been given. Only when the sale occurs "pursuant to . . . Section 22" and the Borrower refuses to surrender possession does a landlord/tenant relationship arise.

Typically, a trustee must strictly comply with the advertisement and notice terms set forth in a deed of trust. *CitiFinancial Mortgage Co., Inc.*, 2007 WL 77289, at *8 (citing *Henderson v. Galloway*, 27 Tenn. 692, 695-96 (Tenn. 1848)). The consequence for failure to comply with foreclosure terms is dependent upon the requirement's source. *Id.* Clear terms laid out in a deed of trust must be strictly complied with in order for the conveyance to be valid. *Id.* (citing *Progressive Bldg. & Loan Ass'n v. McIntyre*, 89 S.W.2d 336, 336 (Tenn. 1936)). However, a foreclosing trustee proceeding according to statutory requirements must not meet such an exacting standard. *Id.* (citing Tenn. Code Ann. §§ 35-5-101 - 35-5-116 (2001 & Supp. 2006)). A trustee's failure to comply with statutory requirements does not render the foreclosure sale void or even voidable. *Id.* (citing Tenn. Code Ann. § 35-5-106; *Doty v. Fed. Land Bank of Louisville*, 89 S.W.2d 337 (Tenn. 1936); *Williams v. Williams*, 156 S.W.2d 363, 369 (Tenn. Ct. App. 1941)). "[W]here a deed of trust provision varies from the statutory requirements, that term will generally supersede the statutory requirement." *Id.* (citing Tenn. Code Ann. § 35-5-101(d); *McIntyre*, 89 S.W.2d at 336; *Potts v. Coffman*, 240 S.W.783, 784 (Tenn. 1922)).

At the time that the notice of the foreclosure sale of the Property was published, Tennessee Code Annotated section 35-5-101[6] provided in relevant part:

(a) In any sale of land to foreclose a deed of trust, mortgage or other lien securing the payment of money or other thing of value or under judicial orders or process, advertisement of such sale shall be made at least three (3) different times in some newspaper published in the county where the sale is to be made.

(b) The first publication shall be least twenty (20) days previous to the sale.

The applicable required contents of the advertisement or notice are as follows:

---

[6]Effective January 1, 2007, the party selling the property is required to send a copy of the notice to the debtor and co-debtor. **Tenn. Code Ann. 35-5-104(e) (Supp. 2006)**.

(1) Give the names of the plaintiff and defendant, or parties interested;

(2) Describe the land in brief terms, including the street address if available;

(3) Mention the time and place of sale;

**Tenn. Code Ann. § 35-5-104 (2001)**.

In this case, SHVF has demonstrated that both the statutory notice requirements and the notice requirements set forth in the Deed of Trust were met. Pursuant to the Deed of Trust, on February 3, 2005, Netbank sent Ms. Robilio a letter via first class mail stating: 1) that she had breached the Deed of Trust's terms; 2) the amount owed to cure the breach; 3) a cure date more than thirty days from the date of the letter; 4) that her that failure to cure would result in acceleration and possibly foreclosure; 5) that she had a right to reinstate the loan after acceleration; and 6) that she had a right to pursue court action. After Ms. Robilio allegedly failed to cure her defaults by the date specified in the notice letter, Netbank exercised its option to accelerate the indebtedness and to invoke the power of sale. After two bankruptcy filing delays, Netbank gave notice of sale by public advertisement as set forth both statutorily and in the Deed of Trust. As we stated above, the notice of sale, scheduling the sale for March 3, appeared in The Daily News on February 10, 17 and 24, 2006. The notice provided among other things: 1) the parties' names; 2) a description of the Property; 3) the Property's address; 4) the date and time of the sale–more than twenty days from the first publication; 5) the place of the sale; and 6) the manner of sale. Furthermore, it specified that "[a]ll announcements at the sale on the date of the sale will take priority over this notice." A copy of the notice of sale was mailed to Ms. Robilio via certified mail, and she signed for it as delivered on February 23, 2006. Moreover, by consent order, the parties allowed Netbank to "continu[e] the foreclosure sale from time to time by announcement at the foreclosure sale."

Although Ms. Robilio, again, filed for bankruptcy on February 28, Netbank was authorized to proceed with the foreclosure sale with the stipulation that a deed could not be recorded unless confirmation of Ms. Robilio's Chapter 13 Plan was denied, or unless her case was dismissed after confirmation. On May 26, Ms. Robilio's bankruptcy plan was confirmed, and on August 26, an agreed order was entered stating that if Netbank failed to received its monthly payment beginning in September, that the automatic stay would be terminated as to Netbank "*without further notice*, hearing, order or ten (10) day stay[.]" (emphasis added). When Netbank failed to receive its mortgage disbursement in September, it scheduled the foreclosure sale for October 30, 2006, and an e-mail was sent to Ms. Robilio's attorney, notifying him of the scheduled sale, specifically advising him that it was

"anticipate[d] that the lender [would] proceed with the sale at that time due to debtor's payment defaults."[7]  On October 25, 2006, the bankruptcy court dismissed Ms. Robilio's Chapter 13 case.  After periodic continuances announced at the time, date and place of the scheduled sales, a foreclosure sale was conducted on October 30, 2006.[8]  A Successor's Trustee Deed was recorded on November 6, 2006, transferring ownership of the Property to FNMA.

On appeal, Ms. Robilio acknowledges that she received notice of the scheduled March 3, 2006 foreclosure sale.  However, she seems to argue that pursuant to the August 25, 2006 agreed order, that she was entitled to further notice.  Although the agreed order provides for additional notice if Netbank failed to receive a payment on its *arrearage* claim, it does not provide for such additional notice regarding a failed payment towards its *ongoing* mortgage claim.  Again, the order states

> If Netbank fails to receive its July and August ongoing mortgage payments from the Trustee in the Trustee's August disbursement or if Netbank fails to receive a monthly ongoing mortgage payment from the Trustee in any month beginning September 2006, then the automatic stay shall be terminated as to Netbank, the subject Property and the proceeds thereof without further notice, hearing order or ten (10) day stay notwithstanding any future modification of the Plan in which the Debtor shall voluntarily surrender the subject Property to Netbank.

Based on the plain language of this order, Netbank was not required to provide further notice following a failed ongoing mortgage payment.  Because Ms. Robilio received the notice required under both the Deed of Trust and under the applicable statutes, we find the foreclosure sale was effective to transfer title to FNMA and ultimately to SHVF.[9]

---

[7]Ms. Robilio claims that the attorney to which the e-mail was sent was no longer her attorney. However, because this notice was merely provided as a courtesy, we need not consider her claim.

[8]Ms. Robilio claims that it is unclear whether the foreclosure sale was conducted on October 27, 2006 or October 30, 2006 because the Successor Trustee's Deed lists the foreclosure sale date as October 27.  A misstated date does not constitute an error requiring deed correction.  **Tenn. Code Ann. § 66-5-107**. Moreover, Ms. Robilio does not argue, nor is there any proof, that an October 27 sale date affected her right to receive notice.

[9]Ms. Robilio also argues that the foreclosure sale was invalid because she was not provided with a payoff statement.  Neither the Deed of Trust nor the statute requires a payoff statement.  The Deed of Trust required only that the notice state the amount necessary to cure the default, which was included in the

(continued...)

Accordingly, a landlord/tenant relationship arose between SHVF and Ms. Robilio, giving SHVF constructive possession of the Property, such that it could maintain an unlawful detainer action. Furthermore, SHVF lost possession of the Property through Ms. Robilio's act of unlawful detainer, satisfying the second element of SHVF's claim. *See Fed. Nat'l Mortgage Ass'n*, 2008 WL 2502114, at *4 (citing *Accord Foster*, 510 S.W.2d at 522). Because SHVF has alleged undisputed facts that show the existence of the elements of its claim, and Ms. Robilio has failed to show the existence of a genuine issue of material fact, we affirm the trial court's grant of summary judgment in its favor.[10] *See Hannan*, 270 S.W.3d at 9 n6.

## B. Due Process

In her statement of issues, Ms. Robilio questions whether the trial court violated her due process rights "[b]ecause of no Notice of sale, no Statement of Payoff, no Time Frame to Cure Default As required in the Deed of Trust." However, she fails to provide any argument whatsoever regarding this issue. Among other reasons, we dismiss this issue as waived.

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. *Whitaker v. Whirlpool Corp.,* 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000); *Paehler v. Union Planters Nat'l Bank, Inc.,* 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997). The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. *Irvin v. City of Clarksville,* 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988). However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe. *Edmundson v. Pratt,* 945 S.W.2d 754, 755 (Tenn. Ct. App. 1996); *Kaylor v. Bradley,* 912 S.W.2d 728, 733 n. 4 (Tenn. Ct. App.

---

[9](...continued)
February 3, 2005 letter to Ms. Robilio.

[10]Ms. Robilio also challenges the foreclosure sale's validity, claiming that the bankruptcy court did not have jurisdiction because Netbank instituted foreclosure proceedings before she filed for bankruptcy, and because her bankruptcy case was dismissed prior to the foreclosure sale. Ms. Robilio's argument is without merit. Despite its stay as to other creditors, the bankruptcy court specifically authorized the foreclosure sale. Moreover, once Ms. Robilio's bankruptcy case was dismissed, the automatic stay was revoked, allowing her creditors to pursue her outstanding debts.

1995).

***Hessmer v. Hessmer***, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).

————Taking into account that Ms. Robilio is a pro se litigant, we find that she has failed to present a sufficient argument concerning this issue. Tennessee Rule of Civil Procedure 27(a) provides that an appellant's brief

> shall contain ... [a]n argument, which may be preceded by a summary of argument, setting forth the contention of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record ... relied on[.]

"The failure of a party to cite to any authority or to construct an argument regarding his position on appeal constitutes waiver of that issue." *Boggs Kurlander Steele, LLC v. Horizon Commc'ns,* No. M2006-00018-COA-R3-CV, 2008 WL 490628, at *4 (Tenn. Ct. App. Feb. 21, 2008) (citing *Newcomb v. Kohler Co.,* 222 S.W.3d 368, 402 (Tenn. Ct. App. 2006); *see also Rector v. Halliburton,* No. M1999-02802-COA-R3-CV, 2003 WL 535924, at *9 (Tenn. Ct. App. Feb. 26, 2003) (per curiam); *Rhea County v. Town of Graysville,* No. E2001-02313-COA-R3-CV, 2002 WL 1723681, at *7 (Tenn. Ct. App. July 25, 2002)).

On appeal, Ms. Robilio addresses this issue only by listing it in the section entitled "issues presented for review." This inclusion within a list of issues does not provide the "argument" and "citation to the authorities" required by Tennessee Rule of Appellate Procedure 27(a). Thus, we find, under Tennessee Rule of Appellate Procedure 27(a), that Ms. Robilio has waived her right to have this issue considered by this Court.

### C.  Counterclaim

————Finally, Ms. Robilio questions whether the trial court addressed her "evidence/counter complaint." We assume Ms. Robilio refers to her request in her "Objection to Plaintiff's Motion for Summary Judgment" to recover actual and punitive damages as a "person damaged by a lender's actions" and for the alleged failures of Netbank and SHVF to comply with the foreclosure statutes' notice requirements. In her brief before this Court, Ms. Robilio seeks $944,000.00 in damages, representing lost salary, medical bills, lost property, and punitive damages.

-13-

Although the trial court did not expressly address Ms. Robilio's "prayer for relief," we find that in granting SHVF's motion for summary judgment, in which it found the notice requirements complied with, that it impliedly denied Ms. Robilio claim for damages. This issue is without merit.

## IV. CONCLUSION

For the aforementioned reasons, we affirm the decision of the circuit court. Costs of this appeal are taxed to Appellant, Glenna Robilio, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.